

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-2004

# Eichenlaub v. Twp of Indiana

Precedential or Non-Precedential: Precedential

Docket No. 03-2707

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Eichenlaub v. Twp of Indiana" (2004). *2004 Decisions*. Paper 271.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/271

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2707

DAVID EICHENLAUB;
IKE CONSTRUCTION;
DANIEL EICHENLAUB;
BARBARA EICHENLAUB,

Appellants

v.

TOWNSHIP OF INDIANA;
TOWNSHIP OF INDIANA BOARD
OF SUPERVISORS;
DOROTHY T. CLAUS; GEORGE E.
DULL, JR.; CHARLES R. FEDEROFF;
JEFFREY D. PECK; DANIEL L.
TAYLOR, in their official capacities;
TOWNSHIP OF INDIANA CODE
ENFORCEMENT OFFICER,
JEFFREY S. CURTI, in his official
capacity; DAN ANDERSON, in his
official capacity; MILDRED BROZEK,
Administratix of the Estate of
Kevin Brozek; TOWNSHIP OF
INDIANA ENGINEER, DANIEL B.
SLAGLE, in his individual and official
capacity

On Appeal from the
United States District Court
for the Western District of Pennsylvania
(Dist. Ct. Nos. 99-cv-01607 and
99-cv-01667)
District Judge:
Honorable Arthur J. Schwab

Argued March 26, 2004

Before: AMBRO, CHERTOFF, and
BECKER, *Circuit Judges.*

(Filed: September 21, 2004)

BLAINE A. LUCAS (Argued)
GERRI L. SPERLING
Springer Bush & Perry P.C.
Two Gateway Center, 15th Floor
Pittsburgh, PA 15222-1402

*Counsel for Appellants*

SCOTT G. DUNLOP (Argued)
STEPHEN J. POLJAK
Marshall, Dennehey, Warner, Coleman
& Goggin, P.C.
2900 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219

*Counsel for Appellees, except for
Dorothy T. Claus*

JEFFREY COHEN (Argued)
MARK A. ECK

1

Meyer, Darragh, Buckler, Bebeneck & Eck
U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA 15219

*Counsel for Appellee, Dorothy T. Claus*

———

OPINION OF THE COURT

———

CHERTOFF, *Circuit Judge*.

Appellants, members of the Eichenlaub family and their family-owned business, have been embroiled in a contentious zoning dispute with Appellees, the Township of Indiana, Pennsylvania, and several of its officials. The controversy arises from the Eichenlaubs' desire to develop certain pieces of property, and from the Township's insistence that the development comply with a number of regulations. The disagreement has engendered claims that Township officials violated the Eichenlaubs' substantive due process and equal protection rights by denying or delaying authorization to develop the properties; that officials violated David Eichenlaub's First Amendment petition and free speech rights by curtailing his speech during a public meeting and removing him from the meeting; that officials retaliated against David Eichenlaub for exercising his First Amendment rights; and that officials are also liable under Pennsylvania state law for damages.

The District Court granted summary judgment on the substantive due process, equal protection, and First Amendment charges but denied the Eichenlaubs' mandamus claim as moot. We affirm the District Court's judgment with respect to the substantive due process and free speech and petition claims. However, we will reverse as to the First Amendment retaliation, equal protection, and writ of mandamus claims.

I.

David, Daniel, and Barbara Eichenlaub own two parcels of property in Indiana Township: seven lots in the Fairview Gardens Plan and a separate tract of land located along Saxonburg Boulevard. In the mid-1990s, the Eichenlaubs commenced plans to develop their Fairview Gardens property, which was part of a twenty-seven lot subdivision of single family residences approved by the Allegheny County Planning Commission and the Board of Supervisors of the Township in 1940 (the "Plan"). In April of 1999, the Eichenlaubs submitted an application to the Township for approval of a revised Plan related to the seven lots (the "Revised Plan"). After several rejections and subsequent revisions, the Township approved the Eichenlaubs' amended subdivision plan on June 22, 1999, conditioned upon an execution of a satisfactory developer's agreement. However, several weeks later, the Eichenlaubs withdrew their Revised Plan, claiming that they had been subject to "unnecessary and onerous obligations" by the Township. Appellant Br. 12.

2

Following the withdrawal of their revised plan application, the Eichenlaubs continued their development efforts for their Fairview Gardens lots. On August 19, 1999, Daniel and Barbara Eichenlaub executed deeds granting two of the Fairview Gardens lots to family members, David and Carl Eichenlaub. One week later, David Eichenlaub submitted a building permit application for a single family residence on Lot 7 of the Plan. The Township rejected that application, as well as a subsequent application filed on August 3, 2000, claiming that the family was trying to develop the seven residential lots in a serial fashion so as to claim colorable exemption from the requirements of the Township Subdivision and Land Development Ordinance.

The Eichenlaubs maintained that they were not required to obtain the Township's approval of their subdivision plans under the then-current land development regulations. They claimed that because the Fairview Gardens subdivision development was part of the twenty-seven lot plan approved in 1940, subsequent revisions to the development codes did not apply to them. The Township argued otherwise and maintained that the Eichenlaubs were obliged to comply with development regulations enacted following the original subdivision approval granted in 1940.[1]

The Eichenlaubs also sparred with Township officials over the development of their Saxonburg Boulevard property. In 1998, the Eichenlaubs filed a permit application to grade the property to plant nursery stock for their landscaping business. The following year, the Eichenlaubs fulfilled a Township request to file a site plan for the project. In June of 2000, the Board approved the Eichenlaubs' plan. However, the Township had not executed the Developer's Agreement because, as the Magistrate Judge found, the Eichenlaubs have refused to pay the engineering fees for the project. App. A37.

In September of 1999, the Eichenlaubs filed two separate civil actions in federal court. In the first case, docket 99-cv-01607, the Township, the Township Board of Supervisors, the Township Board Code Enforcement Officer, the Township Manager, and the Township Engineer were named defendants. David Eichenlaub alleged that the Township violated his First Amendment rights to petition government for redress of grievances when he was limited in his right to speak at a public meeting on September 14, 1999, and was removed from the same meeting[2] (Count I)

___

[1] The Township's position has been that the Eichenlaubs were required to comply with the requirements of the current Subdivision Ordinance (enacted in

1980), the Township Grading Ordinance (enacted in 1987), and the Stormwater Management Ordinance (enacted in 1988).

[2] David Eichenlaub contends that at the September 14, 1999 meeting, board chairman Peck also "repeatedly

3

and was subject to various alleged retaliatory actions taken by the Defendants (Count II). David Eichenlaub and his business, Ike Construction, also asserted defamation claims regarding Defendants' involvement in a newspaper article recounting that David Eichenlaub had violated an Indiana Township Ordinance (Count II).

In the second case, docket 99-cv-01667, David, Daniel, and Barbara Eichenlaub raised conspiracy claims under 42 U.S.C. § 1983 asserting: (1) violation of their Fourteenth Amendment rights to substantive due process (Count I) arising out of delays and disputes in securing authorization to develop the Fairview Gardens and Saxonburg Boulevard properties; and (2) denial of equal protection under the Fourteenth Amendment by being denied the opportunity to proceed with their projects (Count II); and (3) arbitrary action, selective enforcement and retaliation regarding both the Fairview Gardens and Saxonburg Boulevard properties (Count III). The Eichenlaubs also alleged that the Defendants' failure to act on their

---

interrupted him and did not let him finish his comments." Appellant Br. 22. He also claims that Peck had called him earlier on August 25, 1999, and suggested that he "not come back and speak at the Township meetings, at the citizens forum." Id. Finally, David Eichenlaub's complaint, 99-1607, asserts without any specificity that the Township hindered him from speaking at meetings.

development applications in the time and manner required under the Pennsylvania Municipalities Planning Code ("MPC") entitled them to a writ of mandamus compelling approval of those projects (Count IV).

The two complaints were consolidated at 99-cv-01667. The Defendants moved for summary judgment on all counts, and the Eichenlaubs moved for partial summary judgment on the counts initially listed in 99-cv-01667.

On August 27, 2002, the Magistrate Judge issued his Report and Recommendation. The report recommended that the District Court: (1) Grant summary judgment for Defendants on David Eichenlaub's First Amendment free speech and petition claim as well his state defamation claim; the Eichenlaubs' equal protection, conspiracy, and official capacity claims alleged against the individual Defendants; (2) deny Defendants' motions for summary judgment on the David Eichenlaub's First Amendment retaliation claims; (3) deny motions by the Eichenlaubs and Defendants for summary judgment on the Eichenlaubs' substantive due process claim; and (4) grant the Eichenlaubs' request for a writ of mandamus based on (a) Defendants' failure to notify the Eichenlaubs of its April 1999 decision to deny approval of the subdivision plan for Fairview Gardens and (b) Defendant's failure to act on the Eichenlaubs' grading permit and site plan applications for the Saxonburg Boulevard property.

4

While the case was pending in District Court, the parties entered into two partial settlement agreements, dated February 12, 2003, and February 24, 2003, under which the Township agreed to grant building permits at Fairview Gardens and approve the subdivision plan and grading permits for the Saxonburg property.

On May 29, 2003, the District Court entered an order granting Defendants' motion for summary judgment on all counts. The Court also dismissed the Eichenlaubs' mandamus requests as moot in light of the partial settlement agreements.

The Eichenlaubs appeal from that order as it relates to the § 1983 claims for substantive due process, equal protection, free speech, and retaliation as well as the denials of mandamus. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Our review over a District Court's grant of summary judgment is plenary. See Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir. 2003). We assess the record using the same summary judgment standard that guides district courts. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## II.

David Eichenlaub's First Amendment claims present two distinct issues. He complains that the Township restricted his ability to speak at various Township Board of Supervisors Meetings and that he was removed from one such meeting on September 14, 1999. In effect, David Eichenlaub alleges a direct restraint on speech in a particular public forum, as well as a restraint on his ability to petition under the Petition Clause of the First Amendment. Second, David Eichenlaub urges that Township officials took adverse action against his family in retaliation for his statements. We examine each claim in turn.

## A.

The government's power to prevent or limit speech on public property is carefully circumscribed by the First Amendment. Not all public property is open to unfettered public speech, for the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." United States Postal Serv. v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 129 (1981). Government facilities that are not committed to public communicative activity may regulate speech by the general public so long as that regulation is reasonable and not based on opposition to a particular viewpoint. Id. at 131 n.7. That is because the government "may legally preserve the property under its control for the use to which it is dedicated." Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 390 (1993).

On the other hand, public areas that

are open to general "assembly and debate" as a matter of tradition or by specific government designation are characterized as a public forum, within which speech can be limited only narrowly. Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998), quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)); see also Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 182 n.2 (3d Cir. 1999). Streets and parks are examples of traditional public forums. See, e.g., Hague v. CIO, 307 U.S. 496, 515 (1939). Public forums are also established when the government opens property for general "expressive activity," Perry Educ. Ass'n, 460 U.S. at 45, as in the case of theaters, Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 555 (1975). Absent a compelling interest, speech in a public forum may not be regulated based upon content. Furthermore, in a public forum any restrictions as to time, place, and manner of speech (1) must be unrelated to content; (2) must be "'narrowly tailored to serve a significant governmental interest'"; and (3) must allow alternative ways of communicating the same information. Whiteland Woods, 193 F.3d at 182 n.2 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).

There is a third type of public setting that the courts have recognized—a forum created by the government that is limited to certain groups or to discussion of certain topics. See Rosenberger v. Rector & Visitors of the Univ. of Va., 515

U.S. 819, 829 (1995); Lamb's Chapel, 508 U.S. at 392-93. An example of this kind of limited public forum is a university facility open for meetings of student groups, but not for the general public. See, e.g., Widmar v. Vincent, 454 U.S. 263, 268 (1981). The Supreme Court has not precisely instructed where the limited public forum is located on the First Amendment spectrum between the strict test for public forum regulation and the more relaxed test for nonpublic regulation. See Whiteland Woods, 193 F.3d at 182 n.2. Earlier decisions, such as Widmar itself, 454 U.S. at 269-70, and Perry Educ. Ass'n, 460 U.S. at 45-46 & n.7, suggest that content-based restraints on limited public forums must be subject to strict scrutiny, and can survive only if they are supported by a compelling interest. Recently, however, the Court has apparently moved to the position that regulation of a limited forum may survive under a test that is less strict than that applied in the case of a general open forum. Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106 (2001). Under this refined test for reviewing limited forum restrictions, content-based restraints are permitted, so long as they are designed to confine the "forum to the limited and legitimate purposes for which it was created." Rosenberger, 515 U.S. at 829; see also Brody v. Spang, 957 F.2d 1108, 1118 (3d Cir. 1992). Two limitations remain. Any restrictions on speech must be viewpoint neutral and must be "'reasonable in light of the purpose served by the forum.'" Good News Club, 533 U.S. at 106-07 (quoting Cornelius v.

6

NAACP Legal Def. & Ed. Fund, Inc., 473 U.S. 788, 806 (1985)).

Put another way, we may say that under contemporary public forum jurisprudence, a designated (as opposed to traditional) forum is reviewed under a sliding standard that allows for content-related regulation so long as the content is tied to the limitations that frame the scope of the designation, and so long as the regulation is neutral as to viewpoint within the subject matter of that content.

In this case, the primary restrictions placed on David Eichenlaub's speech occurred during his appearance at the citizen's forum portion of the Township Board of Supervisors meeting on September 14, 1999, during which he was eventually removed. Whether the citizen's forum was a general public forum or a limited public forum is a close question. Certainly, the citizen's forum is not limited to a particular class of speakers, as was the case in Cornelius (charities), Rosenberger (student groups), or Forbes (political candidates). Indeed, the record discloses that the citizen's forum—as its name suggests—is open to all citizens who wish to address the Township government. At the same time, a review of the transcript of the forum confirms that even the public discussion session of the Township meeting was designed to be limited to matters pertaining to town government. The meeting was not the equivalent of a municipal theater, as in Southeastern Promotions, or a public park or street. One would certainly not expect the forum of a Township meeting to

include such expressive activities as performance art, lectures on medieval history, or arguments about private disputes involving town citizens. "Plainly, public bodies may confine their meetings to specified subject matter . . . ." City of Madison Joint Sch. Dist. v. Wis. Employment Relations Comm'n, 429 U.S. 167, 175 n.8 (1976); see White v. City of Norwalk, 900 F.2d 1421, 1425 (9th Cir. 1990). Thus, matters presented at a citizen's forum may be limited to issues germane to town government.

With this framework, we agree with the District Court that summary judgment against David Eichenlaub on his restraint of speech and petition claims was appropriate. The record of the September 14, 1999 meeting discloses that he was repetitive and truculent, and that he repeatedly interrupted the chairman of the meeting. Restricting such behavior is the sort of time, place, and manner regulation that passes muster under the most stringent scrutiny for a public forum. Indeed, for the presiding officer of a public meeting to allow a speaker to try to hijack the proceedings, or to filibuster them, would impinge on the First Amendment rights of other would-be participants. We have no difficulty sustaining the decision to remove David Eichenlaub on that basis.

To be sure, the chairman of the meeting sought to restrict the discussion to topics of public interest and requested that David Eichenlaub not discuss matters of private concern. To the extent those restrictions were not strictly content-neutral, the chairman's actions served the

function of confining the discussion to the purpose of the meeting. As we have observed, speech at a citizen's forum may be limited according to its germaneness to the purpose of the meeting.[3] At any rate, the overwhelming, and wholly sufficient, motive to eject David Eichenlaub from the meeting was the perfectly sustainable and content-neutral desire to prevent his badgering, constant interruptions, and disregard for the rules of decorum.

We will affirm summary judgment for the defendants on this claim.

## B.

The Eichenlaubs' retaliation claims stand on different footing, however. The Magistrate Judge determined that there were material issues of fact as to whether the defendants took steps to retaliate against the Eichenlaubs for David Eichenlaub's various statements and complaints, including his speech at the September 14, 1999 meeting. The District Court entered summary judgment against the Eichenlaubs, however, on the ground that, even if there was retaliation, the speech in question related to private matters, rather than matters of public concern, and, therefore, was unprotected by the First Amendment.[4]

The District Court's opinion misconceives the scope of protection for speech under the First Amendment.

The issue of government retaliation for unwelcome communication arises in various contexts. Sometimes, public employees claim adverse employment action resulted because of their speech. Prisoners not infrequently allege that punishment was spurred by their complaints. And, as is the case here, citizens may charge that the government hurt them in retaliation for some criticism against the authorities. See Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 671-72 (1996).

In general, constitutional retaliation claims are analyzed under a three-part test. Plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) (public employee retaliation); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the

---

[3] Of course, viewpoint-based regulation is not proper. We do not read the record of the proceedings to indicate that the presiding officer attempted to muzzle David Eichenlaub because he disagreed with Eichenlaub's viewpoint. App. A1225-35.

[4] Appellants challenge the District Court's determination that David Eichenlaub's speech was not about matters of public concern. Since we determine that the public concern test is not applicable, we need not address this challenge.

8

retaliation. In this case, David Eichenlaub argues that his exercise of his freedom of speech and ability to petition the government under the First Amendment are the protected activities in question.

The District Court relied in part on our opinion in Anderson to hold that "plaintiff must show that speech is a matter of public concern in order to receive First Amendment protection." App. A17 (quoting Anderson, 125 F.3d at 162). This reading of our case law, however, is overbroad. Our decision in Anderson—and all the other decisions relied upon in the District Court or by the parties—provide only that a "public concern" requirement applies when a claim of First Amendment retaliation is brought by a public employee against his or her government employer. Anderson, 125 F.3d at 162. The speech on public concerns requirement embodied in these decisions has not been applied, however, when non-employees complain that government has retaliated against them *as citizens* for their speech. To expand this public concern limitation into the broader context of all citizen speech would wrench it from its original rationale and curtail a significant body of free expression that has traditionally been fully protected under the First Amendment.

We begin with the proposition that, except for certain narrow categories deemed unworthy of full First Amendment protection—such as obscenity, "fighting words" and libel—all speech is protected by the First Amendment. R.A.V. v. St. Paul, 505 U.S. 377, 382-90 (1992). That

protection includes private expression not related to matters of public concern. See Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 760 (1995); Connick v. Myers, 461 U.S. 138, 147 (1983); United Mine Workers of Am. Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217, 223 (1967).

The "public concern" test was formulated by the Supreme Court in addressing speech restrictions placed by governmental entities on their own public employees. Regulation of public employee speech presented two features not present in other forms of speech control. First, acting as an employer, the government has some authority to impose conditions upon those who seek jobs, including conditions that limit the exercise of otherwise available constitutional rights. See, e.g., Broadrick v. Oklahoma, 413 U.S. 601 (1973). Second, "[w]hen someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her." Waters v. Churchill, 511 U.S. 661, 675 (1994) (plurality opinion).

The Supreme Court approached public employee speech, therefore, as a balance between the rights those employees enjoy as citizens and the obligations they bear as loyal employees. In Connick v. Myers, 461 U.S. 138 (1983), the Court held that while government employers, like their private counterparts, have authority to manage

their workers—including the authority to restrict various kinds of expression—the First Amendment imposes limits on that authority when the employees are speaking about matters of public concern. To strike the balance, the Court carved out speech on matters of public concern as a species of expression that would remain protected even for government employees. The Court reasoned that speech on public issues "occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." Id. at 145 (quoting Carey v. Brown, 447 U.S. 455, 467 (1980)).[5]

Nothing about the reasoning of Connick suggests that this public/private concern distinction has any role to play regarding speech outside the public employment setting.

To the contrary. In singling out speech on matters of public concern for the highest protection in the government workplace, the Supreme Court took pains

to avoid any implication that speech on private matters is not entitled to constitutional protection:

> We do not suggest, however, that Myers' speech, even if not touching upon a matter of public concern, is totally beyond the protection of the First Amendment. "[The] First Amendment does not protect speech and assembly only to the extent it can be characterized as political . . . .

Id. at 147 (quoting United Mine Workers of Am. Dist. 12, 389 U.S. at 223). Thus, the Court distinguished between types of speech only in order to accommodate the strong countervailing need for governments to discipline their own personnel.

This Court has also observed, albeit in dictum, that "[s]peech unrelated to a matter of public concern is not, like obscenity, entirely outside the protection of the First Amendment. While the government as employer may discharge a public employee for such speech, the government as sovereign may not sanction the same individual when she engages in such speech as a citizen, outside the employment context." Azzaro v. County of Allegheny, 110 F.3d 968, 976 n.3 (3d Cir. 1997).

To be sure, numerous cases, including those cited by the District Court and by the parties, have reiterated the

---

[5] That special status for speech about matters of public interest drew support from other lines of First Amendment case law that gives extraordinary protection to even defamatory speech and invasions of privacy when they concern public figures or matters of public interest. See Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749, 758-59 (1985); New York Times v. Sullivan, 376 U.S. 254, 279-80 (1984); Time, Inc. v. Hill, 385 U.S. 374, 387-88 (1967).

public/private matters distinction in the context of retaliation claims brought by public employees. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1997); Anderson, 125 F.3d at 160-61 (3d Cir. 1997); Kokkinis v. Ivkovich and Vill. of Bridgeview, 183 F.3d 840 (7th Cir. 1999); Russolini v. Salisbury Township, 126 F. Supp. 2d. 821 (E.D. Pa. 1999); Alvarez v. City of New York, 31 F. Supp. 2d 334 (S.D.N.Y. 1998). What is pivotal, though, is that these cases do not involve retaliation by government bodies against citizens who are not employed by the government (and who, incidentally, cannot be viewed as having limited their speech as a condition of voluntary employment).[6] Indeed, many other cases point to the principle that outside the employment context the First Amendment forbids retaliation for speech even about private matters. For example, we have held that First Amendment claims may be based on allegations that a prisoner's complaint against a guard caused retaliation. Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003). Realistically, these kinds of complaints are often highly particularized objections to alleged individual mistreatment. We do not, however, impose a "public concern" threshold.

In short, while speech on topics of public concern may stand on the "highest rung" on the ladder of the First Amendment, private speech (unless obscene or fighting words or the like) is still protected on the First Amendment ladder. See Capitol Square Review, 515 U.S. at 760. The rationale for a public/private concern distinction that applies to public employees simply does not apply to citizens outside the employment context. By the same token, the decisions of the Supreme Court and of our court have not established a public concern threshold to the protection of citizen private speech. We decline to fashion one now. "[C]onstitutional review of government employment decisions must rest on different principles that review of speech restraints imposed by the government as sovereign." Waters, 511 U.S. at 674.

Accordingly, David Eichenlaub's speech, even if concerned with private grievances, is entitled to First Amendment protection.[7]

---

[6] The District Court did rely upon Grimm v. Borough of Norristown, 226 F.Supp. 2d 606, 636 n.19 (E.D.Pa. 2002), in which another District Court translated the public concern requirement from the public employee setting to the zoning setting. That opinion is, of course, not binding on us, and for the reasons stated here, we disagree.

[7] The District Court opinion also overlooked the fact that the Eichenlaubs raised claims of retaliation for the exercise of rights under the Petition Clause of the First Amendment. We held in San Filippo v. Bongiovanni, 30 F.3d 424 (1994), that under the Petition Clause, the filing of a "non-sham" petition was protected activity in the public employee context—without

11

Because the District Court did not consider the Magistrate's Report that found material issues of fact with regard to the other elements of the retaliation claim, we will vacate the judgment on the First Amendment retaliation claim and remand for further proceedings.

III.

A.

The District Court properly held, and the Eichenlaubs do not dispute, that whether a zoning official's actions or inactions violate due process is determined by utilizing a "shocks the conscience" test. United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 399 (3d Cir. 2003). That test, of course, is not precise, see County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998), and it also "varies depending on the factual context," United Artists, 316 F.3d at 400. What is clear is that this test is designed to avoid converting federal courts into super zoning tribunals. What "shocks the conscience" is "'only the most egregious official conduct.'" Id. (quoting Lewis, 523 U.S. at 846).

Cases cited by the Eichenlaubs in support of their argument illustrate the

_____

regard to the "public concern" test. In view of our disposition, we need not address whether the Petition Clause creates broader rights than the Free Speech Clause in the non-employee context. See id. at 449 (Becker, J., dissenting).

kinds of gross misconduct that have shocked the judicial conscience. In Conroe Creosoting Co. v. Montgomery County, 249 F.3d 337 (5th Cir. 2001), the Court of Appeals determined that whether a plaintiff's substantive due process had been violated by local officials was a triable allegation. But that was not a zoning dispute. Rather, plaintiffs charged that the officials fraudulently converted a tax levy for a $75,000 deficiency into an unauthorized seizure and forced sale and destruction of an $800,000 ongoing business. The principal defendant conceded that the sale was unauthorized. The facts carried a whiff of self-dealing, since the principal defendant's friends were alleged to have been engaged to perform auction services. In effect, the court found that the facts asserted amounted to a claim of an unconstitutional "taking" without just compensation, in violation of the Fifth Amendment, or an improper seizure, in violation of the Fourth Amendment. Id. at 340 n. 9.

Associates in Obstetrics & Gynecology v. Upper Merion Township, 270 F. Supp. 2d 633 (E.D.Pa. 2003), is also a case that implicates more than just disagreement about conventional zoning or planning rules. In Obstetrics, the District Court denied a motion to dismiss a claim that municipal defendants denied substantive due process when they selectively closed plaintiff's medical office for the purpose of blocking the provision of abortion services. Because the municipal action there implicated abortion rights, the District Court's

12

analysis of the "shocks the conscience" standard proceeded largely under those judicial decisions that address protection of abortion services under the Fourteenth Amendment. That analysis is inapplicable to a zoning controversy that does not involve allegations of hostility to constitutionally-protected activity on the premises.[8]

By way of contrast, as the District Court found, the misconduct alleged here does not rise sufficiently above that at issue in a normal zoning dispute to pass the "shocks the conscience test."[9] Basically, the Eichenlaubs assert that zoning officials applied subdivision

---

[8] Two other decisions relied upon by the Eichenlaubs are just inapposite. Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988), which involved allegations that defendants were making zoning decisions to harm members of an opposing political party, was decided before Lewis and under a different legal standard than the "shocks the conscience" test. Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995), is an equal protection case, not a substantive due process case.

[9] The Magistrate Judge initially analyzed the substantive due process claim under the "improper motive" test of Bello v. Walker, 840 F.2d 1124 (3d Cir.), cert. denied, 488 U.S. 851 (1988), 488 U.S. 868 (1988). The District Court had the benefit of our intervening decision in United Artists, which made clear that "shocks the conscience" applies.

requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs. With the exception of the previously discussed First Amendment retaliation claims, these complaints are examples of the kind of disagreement that is frequent in planning disputes. As counsel for appellants acknowledged during argument, there is no allegation of corruption or self-dealing here. The local officials are not accused of seeking to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group. There is no virtual "taking" as in Conroe. And as we have previously observed,

> [E]very appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but "it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983."

United Artists, 316 F.3d at 402 (quoting Creative Env'ts, Inc. v. Estabrook, 680

F.2d 822, 833 (1st Cir. 1982)).

The District Court applied the correct legal standard and did not abuse its discretion in dismissing the substantive due process claim.

B.

In the District Court, the Eichenlaubs also raised an equal protection challenge to what they claimed was selective or unequal enforcement of local development rules. Indeed, they argue here that other property owners have not been held to the same rigorous procedures that they claim were applied to the Eichenlaubs' parcels. They do not, however, assert that any differences in treatment stem from racial or other invidious forms of discrimination, or from an effort to burden fundamental rights (again, except for their First Amendment rights, which we treat above).

The Supreme Court has held that a "'class of one'" can attack intentionally different treatment if it is "'irrational and wholly arbitrary.'" Village of Willowbrook v. Olech, 528 U.S. 562, 564, 565 (2000) (internal citations omitted) (per curiam). The Magistrate Judge briefly addressed this issue in denying the motion for summary judgment on this claim, but the District Court reversed and granted summary judgment without discussion.

The "irrational and wholly arbitrary" standard is doubtless difficult for a plaintiff to meet in a zoning dispute, id. at 565-66 (Breyer, J., concurring), and we do not view an equal protection claim

as a device to dilute the stringent requirements needed to show a substantive due process violation. It may be very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach. Nevertheless, the District Court simply did not address the equal protection claim at all. Bearing in mind that we have remanded the retaliation claims for further consideration by the District Court, we will remand this somewhat overlapping claim as well so that the District Court may consider whether it is appropriate for summary judgment.

IV.

Finally, the Eichenlaubs appeal the District Court's decision to dismiss their request for a writ of mandamus to obtain a "deemed approval" of their proposed subdivision and development plans. In his Report and Recommendation of August 27, 2002, Magistrate Judge Caiazza recommended that the Eichenlaubs' request for a writ of mandamus be granted with respect to (1) the failure to inform the Eichenlaubs in writing of the Town Board's April 1999 vote denying the revised Fairview Gardens subdivision plan and (2) the Township's failure to timely review the Eichenlaubs' Saxonburg Boulevard grading permit and site plan applications.

However, the District Court determined that the Eichenlaubs' request for "deemed approval" of the Fairview Gardens and Saxonburg property plans was moot because the parties had executed

14

two partial settlement agreements on February 12, 2003, and February 24, 2003. The Eichenlaubs allege here that this decision was improper because the partial settlement agreements left open the issue of payment of damages. The District Court never addressed whether damages were appropriate.

Mandamus will issue to compel a government agency's performance of a ministerial act when the plaintiff has a clear legal right to the remedy, the defendant has a duty, and there is no other equitable or appropriate remedy. Malone v. W. Marlborough Township Bd. of Supervisors, 570 A.2d 147, 148-49 (Pa. Commw. Ct. 1990). Under Commonwealth law, as the Township itself noted, "[d]amages recoverable in mandamus are those incidental to the specific relief being sought." Stoner v. Township of Lower Merion, 587 A.2d 879, 885 (Pa. Commw. Ct. 1991). "[A]ny damages available to the land owners as a result of the township's wrongful withholding of approval must be confined to those incidental to the specific relief available in mandamus." Id.

On appeal, we cannot determine whether summary judgment for damages incidental to mandamus was appropriate. Neither the Magistrate Court nor the District Court discussed the issue of damages sustained by the Eichenlaubs with respect to the delay in receiving the permits. In addition, neither the Eichenlaubs nor the Township has pointed to evidence in the record on which this Court could rely to sustain or reject a claim for monetary relief. We remand this issue to the District Court for a determination whether summary judgment is appropriate on the claim for damages incidental to mandamus.

We will affirm the District Court's order granting summary judgment to the Township of Indiana on the Eichenlaubs' substantive due process and David Eichenlaub's free speech and petition claim. With regard to David Eichenlaub's First Amendment retaliation claim and the Eichenlaubs' equal protection claim, we will vacate the District Court's judgment and remand for further proceedings. We will also remand the District Court's order denying the Eichenlaubs' application for a writ of mandamus for consideration of damages incurred, if any.