**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1138
_____

THOMAS R. WHITTAKER; CHRISTY L. WHITTAKER; EDNA J. HAMILTON,
as Executrix of the Estate of David C. Hamilton,

Appellants

v.

COUNTY OF LAWRENCE; TOWNSHIP OF NESHANNOCK;
LAWRENCE COUNTY ECONOMIC DEVELOPMENT CORPORATION;
REDEVELOPMENT AUTHORITY OF LAWRENCE COUNTY;
STEVE J. CRAIG; DANIEL J. VOGLER; FRANK TELESZ; JAMES GAGLIANO, JR.;
DENNIS F. ALDUK; JOSEPH CAMINITI; RYAN KEGEL; JON NATALE;
GALE E. MEASEL, JR.; ROBERT DEL SIGNORE, SR.; LINDA NITCH
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:04-cv-1092)
District Judge:  Hon. Nora Berry Fischer

Submitted Under Third Circuit LAR 34.1(a)
May 13, 2011

Before:  SMITH, CHAGARES, and VANASKIE, <u>Circuit</u> <u>Judges</u>.

(Filed:  July 15, 2011)

_____

OPINION
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Thomas Whittaker, Christy Whittaker, and Edna Hamilton (the "Property Owners") appeal from the District Court's dismissal of their case. For the reasons set forth below, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly recite the facts. The Property Owners all owned parcels of property within "Millennium Park," an area of approximately 530 acres that had been identified for industrial development by the Lawrence County Economic Development Corporation ("LCEDC"), which is a private non-profit corporation formed by Lawrence County. When a potential buyer became interested in the Property Owners' land, the LCEDC attempted to purchase the property. These negotiations were unsuccessful, and the County then created the Redevelopment Authority of Lawrence County ("RALC"), which had the authority to condemn property. Declarations of Taking were filed in the Lawrence County Court of Common Pleas against the Property Owners' parcels on July 29, 2004.

Knowing that the condemnation of their property was imminent, the Whittakers filed an action in federal court under 42 U.S.C. § 1983 on July 23, 2004, and Hamilton filed a similar action on July 27, 2004. The defendants filed motions to dismiss these cases, but the District Court stayed these actions pending the outcome of the eminent domain proceedings in Pennsylvania state court as well as the United States Supreme Court's decision in Kelo v. City of New London. The Whittakers subsequently filed a second suit naming additional defendants, and that action was consolidated with their

2

previous action and the Hamilton suit in August of 2005. On October 15, 2007, the District Court lifted the stay on the federal action and ordered that a single amended complaint be filed, containing all of the parties' allegations. The case was then stayed again pending the outcome of the Pennsylvania adjudication of the takings.

On December 22, 2008, the Pennsylvania Commonwealth Court, sitting en banc, concluded that the RALC improperly condemned the property at issue. The District Court reopened the case, and a renewed motion to dismiss was filed. The District Court granted the motion on December 7, 2009, concluding that the Property Owners had failed to state a claim on any of their federal causes of action, and declining to exercise supplemental jurisdiction over the remaining state law claims. The instant appeal followed.

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367, and this Court has jurisdiction under 28 U.S.C. § 1291. We exercise de novo review of a District Court's dismissal under Federal Rule of Civil Procedure 12(b)(6). Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008).

## III.

The majority of the Property Owners' argument focuses on their contention that the District Court erred in reading Kelo as providing a national standard for what constitutes a "public use" for purposes of the Fifth Amendment's takings clause. The Fifth Amendment's takings clause provides "nor shall property be taken for public use, without just compensation," and the Property Owners argue that in determining whether

3

something constitutes a public use, we must look to state law on the subject. They rely heavily on the fact that the Pennsylvania Commonwealth Court, in In re Condemnation by Redevelopment Authority of Lawrence County, 962 A.2d 1257 (Pa. Commw. Ct. 2008), held that Pennsylvania law does not permit eminent domain to be used to foster economic development. According to the Property Owners' reading of Kelo, the Fifth Amendment permits economic development to constitute a public use, but courts should look to state law to determine whether that state has made such a use a public use. We disagree.

The question facing the Supreme Court in Kelo was whether the Fifth Amendment's takings clause permitted economic development to constitute a public use. The Court concluded that economic development could constitute a public use, stating that "[p]romoting economic development is a traditional and long-accepted function of government." Kelo v. City of New London, 545 U.S. 469, 484 (2005). The Court went on to "emphasize that nothing in our opinion precludes any State from placing further restrictions on its exercise of the takings power," and noted that "[t]his Court's authority . . . extends only to determining whether the City's proposed condemnations are for a 'public use' within the meaning of the Fifth amendment to the Federal Constitution." Id. at 489-90.

We do not believe that this language requires that we look to what limitations various states impose on their own eminent domain powers to determine whether the taking at issue violates the Fifth Amendment. Instead, we find the Court's statement in Kelo to be clear: a taking for purposes of economic development satisfies the Fifth

4

Amendment's public use requirement. Were we to accept the Property Owners' argument and allow states to define what constitutes a public use for purposes of the Fifth Amendment, we would be permitting the states to limit not only their own actions, but also the ability of the federal government to exercise its eminent domain power. Rather than doing this, we will take Kelo at its face value, and interpret it as providing a federal constitutional floor for the definition of a public use that allows states to build upon this floor should they choose to do so. Although we need not resolve the question of whether the conduct in this case violated Pennsylvania's state laws or constitution, we do hold that such conduct does not violate the Federal Constitution and we will affirm the District Court's dismissal of the Property Owners' Fifth Amendment takings claim.

The Property Owners next argue that the District Court erred in dismissing their substantive due process claim. In reviewing the conduct of executive officials, only conduct that "shocks the conscience" rises to the level of a substantive due process violation. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Whether conduct shocks the conscience is a question of law for the court to decide. Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004). The Property Owners assert that the Lawrence County Commissioners authorized the use of eminent domain power despite no indication of blight, as required by Pennsylvania's Urban Redevelopment Law, and that this deliberate misuse of state authority shocks the conscience.

In dismissing this claim, the District Court appears to have relied on the fact that there was no conduct alleged that violated the Federal Constitution, and this Court's statement that "'[a] bad-faith violation of state law remains only a violation of state

5

law.'" Appendix ("App.") 51 (quoting <u>United Artists Theatre Circuit, Inc. v. Twp. of Warrington</u>, 316 F.3d 392, 402 (3d Cir. 2003)).  We agree with the policy embodied in that statement, even if the District Court slightly overstated the principal.  First, an underlying constitutional violation is not required to state a substantive due process claim, and some violations of state law may "shock the conscience."  This, however, does not mean that every violation of state law is "constitutionalized" through the application of the substantive due process clause, and the District Court was properly concerned with preventing this provision from turning into a broad authorization to review state actors' compliance with state law.  On several occasions, this Court has implied that a violation of state law will constitute conscience shocking behavior when it contains "allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggest[] conscience-shocking behavior."  <u>Chainey v. Street</u>, 523 F.3d 200, 220 (3d Cir. 2008); <u>see also</u> <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274, 286 (3d Cir. 2004).  In other words, a state official's failure to follow state law does not, by itself, shock the conscience in the absence of additional facts.  No such additional facts are presented in this case; instead, the Property Owners simply allege that the defendants did not follow state law in taking their property.  While this certainly is not conduct without a remedy, the remedy is not provided by the Federal Constitution's substantive due process clause. For this reason, we will affirm the District Court's dismissal of the substantive due process claim.

The Property Owners also allege that the District Court erred in dismissing their equal protection claims.  In bringing this claim, they proceeded as a "class of one,"

6

arguing that the action in this case amounted to "intentional and arbitrary discrimination" without a rational basis. Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The Property Owners assert that because the property was not blighted, there was no legitimate government interest in exercising eminent domain over the property and that the defendants acted irrationally in condemning it.

We again disagree with the Property Owners' argument. Much as the Federal Constitution's definition of public use does not depend on state law, we do not refer to state law in establishing whether the government has a legitimate interest in taking the property. States have a legitimate government interest in exercising their eminent domain power for the public use, which, for purposes of the Federal Constitution, includes economic development, as discussed above. The Property Owners' argument that there was no legitimate government interest in this case, therefore, is without merit. Further, there was no arbitrary singling out of the properties in question in the present case. Instead, the properties were chosen because they were the only properties not purchased within the Millennium Park area, meaning that all similarly situated individuals were treated similarly in this case. In sum, the state action both advanced a legitimate government interest and was not discriminatory. That state law may place further limitations on the use of eminent domain power does not cause a federal equal protection problem, and we will affirm the District Court's dismissal.

The Property Owners also find error in the District Court's treatment of their conspiracy claims, its discussion of qualified immunity, and its dismissal of their state law claims. Because we have not found any underlying error in the District Court's

7

treatment of the substantive claims, however, we need not address any of the Property Owners' arguments on these issues.  A conspiracy to engage in conduct that does not amount to a constitutional violation is not a violation of § 1983, and no immunity is necessary if there was no unconstitutional act.  Further, as we agree that all of the federal claims were properly dismissed, the District Court did not err in declining to exercise supplemental jurisdiction over the state law claims.  See 28 U.S.C. § 1367(c)(3).  We will, therefore, affirm the District Court's treatment of all of these issues as well.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.