NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1835
_____

EDWARD BUTTON; SANDRA BUTTON;
BUTTON OIL COMPANY, INC.,
                                                  Appellants

v.

ALAN SNELSON; DORRANCE TOWNSHIP
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-12-cv-01941)
District Judge:  Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 5, 2016

Before:  FISHER[*], KRAUSE and MELLOY[**], *Circuit Judges*.

(Filed: February 10, 2017)
_____

OPINION[***]
_____

_____

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.
[**] Honorable Michael J. Melloy, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
[***] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

In this land-use dispute, Edward and Sandra Button claim the District Court erred in granting summary judgment against them on their Fourteenth Amendment due process claims, brought under 42 U.S.C. § 1983. We will affirm the District Court's order and final judgment in favor of Alan Snelson and Dorrance Township.

I.

The Buttons are the acting owners and operators of the Blue Ridge Truck Stop in Dorrance Township, Pennsylvania. In 1991, they received conditional land development approval from the Dorrance Township Board of Supervisors to operate Blue Ridge as "a gas station, truck fueling stop and convenience store."[1] This approval was conditioned upon the authorization of an "Erosion and Sedimentation Control Plan" and the issuance of a Highway Occupancy Permit. The Buttons admit they did not obtain an approved Sedimentation Control Plan until 2011 or receive the required Highway Occupancy Permit before filing this lawsuit in 2012. The first official recording of an approved land development plan did not occur until nearly twenty-three years after the initial conditional approval and twenty months after the Buttons filed their complaint in the District Court.

The 1991 approval did not authorize the "storage, distribution or sale of propane." Nevertheless, in 2010, the Buttons applied to Dorrance Township for a zoning permit to

---

[1] App. 4a.

2

construct a fence to enclose a "bulk propane storage facility."[2] Believing the Buttons' intended propane usage was "subject to land use regulations that require[d] approval beyond what [they] had already obtained," part-time zoning officer Alan Snelson wrote the Buttons a letter styled as a "Cease and Desist Order."[3] The letter outlined "a list of items" required for compliance, requested documentation regarding "approvals that have been granted for the operations being conducted at the 'storage building,'" and warned of potential enforcement remedies (for example, civil action) available to the Township if the Buttons failed to comply.[4]

The Buttons' attorney responded to Snelson, asserting that the Buttons' propane storage complied with Dorrance Township's relevant requirements. Snelson replied with a "multitude of mail and email letters," reiterating his stance that "further zoning and land approvals [were required] for the operation of a bulk propane storage and distribution business on their property."[5] Snelson also "notified" the Buttons that the Township intended to take legal action against them for their ongoing violations; told the Buttons' employees at Blue Ridge he could "shut them down"; and said to Sandra Button when presented with the original land development plan, "This means nothing. See this new book? It draws a line in the sand. You're starting over."[6]

---

[2] App. 7a.
[3] App. 7a, 64a.
[4] App. 64a-65a.
[5] App. 9a-10a.
[6] App. 12a, 20a, 21a. The book Snelson referenced is unclear.

Contrary to municipal protocol, Snelson initiated his own lawsuit against the Buttons in state court, listing himself (i.e., the "Dorrance Township Zoning Officer") as plaintiff. His complaint alleged that the Buttons "failed to receive all appropriate permits and land development approvals" and sought $12,000 in damages.[7] After a January 2012 hearing in state court, Snelson directed an *ex parte* correspondence to the presiding District Judge's attention to "wrap-up . . . what was said."[8] The judge ultimately entered a default judgment for the Buttons, and no appeal was taken.

Around this time, the Zoning Hearing Board determined that a zoning variance was not necessary for the Buttons because their construction of the propane facility at Blue Ridge was a valid, non-conforming use. Even so, the land development approval for the property remained outstanding until May 2014.

The Buttons sued Snelson and Dorrance Township in the District Court for the Middle District of Pennsylvania in September 2012, alleging violations of their procedural and substantive due process rights under the Fourteenth Amendment. The Buttons sought compensatory damages for lost income and injury to their business reputation, as well as punitive damages against Snelson. Both parties moved for summary judgment. The District Court denied the Buttons' motion but granted Snelson and Dorrance Township's motion, entering final judgment in their favor. This timely appeal followed.

---

[7] App. 16a.
[8] App. 17a.

II.[9]

We review the District Court's disposition of a summary judgment motion *de novo*, applying the same standard as the District Court. Summary judgment is appropriate if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.[10]

III.

On appeal, the Buttons argue that the District Court (A) improperly concluded that Snelson's conduct did not meet the "shock-the-conscience" test for substantive due process violations and (B) erroneously found that the Buttons applied for a zoning variance. We consider each argument in turn.

A.

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured

---

[9] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

[10] *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014); *see* Fed. R. Civ. P. 56(a).

by the Constitution or laws of the United States."[11] A substantive due process violation occurs if a government official engages in "an abuse of executive power so clearly unjustified by *any* legitimate objective of law enforcement" that it is barred by the Fourteenth Amendment.[12] To establish a *prima facie* case under § 1983, the Buttons must show that (1) Snelson deprived them of a substantive due process right (2) under color of state law.[13] The first prong of the analysis requires the Buttons to prove that the "particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."[14]

There is no dispute that the Buttons have a fundamental property interest in their business protected under the Fourteenth Amendment Due Process Clause. However, we agree with the District Court that no reasonable jury could find that Snelson's conduct "shocks the conscience."

---

[11] *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). The Buttons' complaint alleged procedural and substantive due process claims. However, the Buttons do not argue that Dorrance Township "violated their rights by failing to provide them with adequate procedures to remedy any deprivation that Snelson might have inflicted." App. 27a. Rather, they assert that Snelson exercised his official power without reasonable justification. We therefore agree with the District Court that this matter is one of substantive due process only.

[12] *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (emphasis added).

[13] *See Shuman*, 422 F.3d at 146.

[14] *See Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

"The 'shocks the conscience' standard encompasses 'only the most egregious official conduct'"[15] and prevents this Court from "being cast in the role of a 'zoning board of appeals.'"[16] Conduct that may shock the conscience varies "depending on the factual context."[17] In the land-use context, we look for evidence of corruption, self-dealing, intentional interference with constitutionally protected activity, virtual "takings," or bias against an ethnic group on the part of local officials.[18] In *Eichenlaub v. Township of Indiana*, for example, a landowner alleged that township officials violated his due process rights by applying subdivision requirements inconsistently, pursuing "unannounced and unnecessary inspection and enforcement actions," delaying permits and approvals, increasing tax assessments, and "malign[ing] and muzzl[ing]" him.[19] We concluded that the alleged misconduct did not "rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test'" and that the allegations mirrored ordinary disagreements frequent in planning disputes.[20]

Guided by *Eichenlaub*, we see no evidence in this record from which a reasonable jury could find that racial invidiousness, corruption, or self-dealing motivated Snelson's

---

[15] *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003) (quoting *Lewis*, 523 U.S. at 846).

[16] *Id.* at 402 (quoting *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)).

[17] *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004) (quoting *United Artists*, 316 F.3d at 400).

[18] *Id.*

[19] *Id*.

[20] *Id*.

enforcement activities. Rather, the evidence suggests Snelson very consistently, although somewhat misguidedly, pursued one goal: the Buttons' compliance with township-zoning and land-development requirements to legitimize their storage of propane at Blue Ridge. The Buttons point to evidence that Snelson "rudely" told Sandra Button, "You're starting over." But given that the Buttons had yet to comply with the original land development approval plan when Snelson began his enforcement activities and that they had been noncompliant for twenty years, we agree with the District Court that Snelson's alleged statements do not create a triable issue of fact exposing him to constitutional liability. Though a reasonable jury may view Snelson's actions as overzealous or ill-advised— particularly his state court lawsuit and *ex parte* communications with the District Judge— merely negligent or sometimes contentious performance of official duties, like Snelson's, does not shock the conscience.

Attempting to show conscience-shocking conduct, the Buttons argue that no legal justification existed for Snelson's enforcement activities. They assert that their zoning district allows propane storage, that Snelson's attempts to regulate their propane storage is preempted by the Pennsylvania Propane and Liquefied Petroleum Gas Act, and that Snelson's enforcement actions were impermissibly motivated by the "inherent danger" of propane rather than traditional zoning functions. Untangling these assertions, we agree with the District Court that "many of the issues in this case arise out of confusion concerning the overlap and the relationships between zoning board approval, land

8

development approval, and the outcomes of the civil action that Snelson filed."[21] The Buttons' arguments fail for the reasons below.

First, even if the Zoning Hearing Board determined that a zoning variance was not needed to approve the Buttons' propane storage facility, Snelson was still authorized to pursue the land development approval outstanding until 2014. Snelson's enforcement actions were permitted, despite the Buttons' assertions to the contrary, because he acted under municipal authority not preempted by the Pennsylvania Propane and Liquefied Petroleum Gas Act. That Act provides that "[t]he Commonwealth specifically reserves the sole right and ability to regulate any and all matters related to the operation of the Liquefied Petroleum Gas Industry."[22] Subsection 15(b)(3) of the Act states that, "[e]xcept as provided in this subsection, a municipality may not prohibit or otherwise regulate the use or storage of [Liquefied Petroleum Gas], including the location or replacement of storage tanks." However, as the District Court correctly noted, subsection 15(b)(2) provides an exception for municipal regulation. Under that subsection, a municipality retains the right under local zoning ordinances to require any Liquefied Petroleum Gas facility to locate within approved zones and "obtain zoning permits, pay zoning fees and undergo inspections." As such, we agree with the District Court that Snelson's regulatory authority was not preempted by state law as the Buttons suggest.

---

[21] App. 29a.
[22] 35 Pa. Cons. Stat. § 1329.15(a).

9

Further, the record supports the District Court's conclusion that the Buttons'
noncompliance motivated Snelson, not his bare concern over the "inherent danger" of
petroleum. The Buttons point to just one instance among Snelson's numerous
correspondences where he mentions the "dangerous nature of the bulk storage of
propane." But for that single instance, however, he consistently asserted that the Buttons
could remedy their violations with proper Township approval and merely sought the
enforcement of standard municipal policies excepted from preemption. Given these
circumstances, we see no error in the District Court's analysis. Summary judgment was
proper on the Buttons' due process claims.

### B.

The Buttons' second argument on appeal is that the District Court erroneously
found that they filed an application for a zoning variance for the activities taking place on
their property on June 23, 2011. They claim they "never applied for a variance" but
merely appeared before the Dorrance Township Zoning Board "by reason of the actions
of Snelson in alleging that [the Buttons'] existing business was operating illegally."[23]
This argument is meritless. The Buttons admitted that the Zoning Hearing Board issued a
favorable decision on their application on August 30, 2011. They then used that favorable
ruling to "attack Snelson's decision to continue to pursue legal remedies after the Board's

---

[23] Appellants' Br. 33.

decision was issued."[24] We therefore see no error in the District Court's finding that the Buttons filed a zoning-variance application.

## IV.

For the reasons above, we will affirm the District Court's summary judgment order and final judgment.

---

[24] App. 13a n.4.