PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1914
_____

DANIEL T. GALENA, individually and on behalf
of the citizens of Erie County,

Appellant

v.

FIORE LEONE, Chairman; JOSEPH GILES, Vice Chairman;
CHARLEY T. AUGUSTINE; RONALD (WHITEY)
CLEAVER; KYLE W. FOUST;
DAVID E. MITCHELL; CAROL J. LOLL, all individually
and as members of the Erie County Council
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 1-07-00089)
Honorable Sean J. McLaughlin, District Judge
_____

Argued December 15, 2010

BEFORE:  SLOVITER, GREENAWAY, JR., and
GREENBERG, Circuit Judges

(Filed: April 13, 2011)

_____

Lawrence M. Otter (argued)
422 Belmont Avenue
P.O. Box 2131
Doylestown, PA 18901-0000

Attorney for appellant

James T. Marnen (argued)
Marnen, Mioduszewski, Bordonaro,
Wagner & Sinnot
516 West Tenth Street
Erie, PA 16502-0000

Attorney for appellees

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this Court in this 42 U.S.C. § 1983 First Amendment action on plaintiff Daniel T. Galena's appeal from the District Court's orders entered on March 5, 2010, vacating a jury's verdict in his favor, granting defendant

2

Fiore Leone judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), and denying Galena's motions for an award of attorney's fees and costs. In his amended complaint, Galena alleged that Leone, at a time that he was the chairperson of the Erie County, Pennsylvania, Council, the County's legislative body, violated his First Amendment rights to free speech and to petition the government by ejecting him from a Council meeting when Galena attempted to object to the Council's procedure in adopting an ordinance. At the end of a two-day trial, the jury returned a verdict in Galena's favor, and awarded him $5,000 in compensatory damages, as it found that Leone intended to suppress Galena's speech by reason of Galena's viewpoint or identity when he had Galena ejected from the meeting. On Leone's post-trial motion, however, the Court vacated the verdict, and granted Leone judgment as a matter of law, as it held that the evidence was insufficient to support the liability verdict. The Court also denied Galena's motions for attorney's fees and costs. Inasmuch as we agree with the District Court that the evidence was insufficient to support the jury's finding that Leone's actions violated the First Amendment and section 1983, we will affirm the orders of March 5, 2010.

## II.   FACTUAL AND PROCEDURAL HISTORY

In 2006 Galena, a resident of Erie County, began attending meetings of the Erie County Council because of his interest in government and his desire to observe how the Council was spending public tax dollars. The Council held meetings every two weeks and Galena estimates that between

3

early 2006 and March 20, 2007, he attended its meetings at least once a month.

The Council has adopted an Administrative Code that provides for the order of business at a typical Council meeting to be as follows: (1) Pledge of Allegiance; (2) Optional Prayer or Invocation; (3) Roll Call; (4) Hearing of the Public; (5) Approval of the Minutes of Previous Meetings; (6) Reports of County Officials, Committees, or Special Advisory Groups; (7) Unfinished Business; (8) New Business; and (9) Adjournment.[1] The Council permits members of the public to comment on any subject they wish to address during the Hearing of the Public portion of the meeting, allowing a speaker who has provided advance written notice of a desire to speak five minutes and a speaker who has not provided such advance notice three minutes. The Council applies the Code to preclude a member of the public from speaking at any time during a Council meeting other than during the Hearing of the Public portion of the meeting.[2] The Code provides that the presiding officer may bar

---

[1] There appear to be several repetitions in the pagination of the appendix. There are two sections of pages labeled 127-130 and three sections labeled as 131-136. We have renumbered the appendix to avoid confusion. The second section of pages labeled 127-136 has become 137-146 and the third section labeled 131-136 has become 147-152. The total number of pages in the appendix is 178.

[2] The Administrative Code does not state that members of the public may speak only during the Hearing of the Public portion of Council meetings, but Leone, who participated in drafting the

a member of the public from the meeting if the individual becomes boisterous or makes offensive, insulting, threatening, insolent, slanderous, or obscene remarks.

The Council takes up the adoption of ordinances during the "New Business" portions of meetings in accordance with a formal procedure in the Code. In this regard, the Code provides that proposed ordinances be introduced in writing, and, except for emergency ordinances, which may be adopted sooner, may be adopted at a meeting held at least one week after the meeting at which they were introduced. The Code requires that all ordinances related to the levying of taxes, before being adopted, are to be read at least once in each of two separate meetings of the Council.

Galena has spoken during the Hearing of the Public portion of Council meetings approximately 14 or 15 times, primarily addressing Erie County's expenditure of tax revenues. Galena testified that when speaking his custom has been to begin by stating his name and address to the Council, and then turning to the audience and greeting them by stating, "[G]ood evening taxpayers." App. at 26. Next, his custom is to face the

---

Code, and who by the time of the trial had served on the Council for 32 years, interprets the Code as imposing such a restriction. Though Galena does not contend that the Code provides for public comments other than during the Hearing of the Public, he contends that, regardless of the Code, members of the public may make objections under the Sunshine Act, a statute we discuss below, at times other than during that portion of meetings.

5

Council and, "more often than not, [he] . . . kind of pan[s] the seven members of County Council with [his] arm . . . and say[s] 'good evening tax spenders.'" Id. Galena testified that Leone, on hearing the latter greeting, often would "grimace and scowl." Id. Galena also testified that while he was speaking, Leone would "more often than not . . . grin, and almost laugh" at his comments, though he did not react that way when other members of the public spoke. Id. at 27.

This litigation arose from events at the March 20, 2007 Council meeting. During the Hearing of the Public portion of that meeting four members of the public addressed the Council: (1) Gil Rocco criticized the Council for its decision making process and for breaking the law by passing a ban on smoking in the county;[3] (2) Renee Vendetti accused the Council of wasting money on trips to Washington D.C. and Harrisburg, Pennsylvania, and stated that the smoking ban was improper under Roberts Rules of Order and that those rules must be followed in the preparation of Council minutes; (3) Kenneth Francis Simon Przepierski stated that the smoking ban was a "smoke screen" so that the Council can "fly through agendas bumping first readings to second readings," criticized the Council's tax exoneration of certain properties, and stated that the budget should be trimmed, id. at 141; and (4) Maria Foster stated that the Council was breaking the law in various ways and that it allowed the Office of Children and Youth to violate the

---

[3] We have examined the smoking ban ordinance, the Erie County Smokefree Air Act of 2006, Ordinance Number 178, 2006, and note that it is not a county-wide ban on smoking but rather applies only in certain places within the County.

6

law even though the agency is under the Council's and the Erie County executive's[4] jurisdiction.  Furthermore, Foster accused Council members of taking pleasure trips to Washington D.C. and receiving cash and extra perks.  All four persons spoke without interruption or other incident.

Following the Hearing of the Public, the Council approved the minutes of the previous meeting and received reports from various committees and Council members.  The minutes of the meeting recite that Leone then addressed the public comments regarding the smoking ban and also made the following statement:

> Mr. Leone then addressed Ms. Vendetti, Ms. Foster and Mr. Przepierski.  Mr. Leone keeps hearing that Council breaks the law.  He cautioned these individuals to be careful when they tell Council they want to be taken seriously; because Council should be taken seriously as well.  It seems that no matter what, some people cannot be pleased.  He recalled a story his father told him – if you pass out ten dollar bills, people will complain that they're not twenties, and he feels his father was probably right.  This seems to be the

---

[4] The County Executive apparently is the county administrator.

> situation here; no matter what Council does, it just isn't enough. People think Council Members should be available 24 hours a day, doing everything they possibly can. Although he probably puts in more time than other members, it is because Mr. Leone has the time. He reminded the audience that this is a part-time job. Council Members are legislators, and Council is getting tired of some of the issues being brought up. He again cautioned people to be careful, because, if necessary, Council will take the matter to court.

App. at 144-45.

Next, the Council considered several ordinances. During this consideration, a Council member made a motion to move a newly introduced ordinance from the first reading to a second reading. At that point Galena and Leone had the following exchange:

> Mr. Leone: Next item, second reading of Ordinance 28, in its entirety, please.

8

Mr. Smith: Second reading of Ordinance Number 28, 2007, 'Fifth 2007 Public Health Fund Budget Supplemental Appropriation for Public Health Preparedness Grant.' (Mr. Smith reads ordinance body)

Mrs. Loll: So moved.

Mr. Mitchell: Second.

Mr. Leone: Moved by Mrs. Loll, seconded by Mr. Mitchell. Comments?

Mr. Galena: Mr. Chairman, I have an objection . . .

Mr. Leone: (uses gavel)

Mr. Galena: Mr. Chairman, I have an objection

Mr. Leone: You're out of order.

Mr. Galena: You are in violation . . .

Mr. Leone: I said you're out of order, if you keep it up I'll have you taken out.

Mr. Galena: I object. You are in violation of Pennsylvania Sunshine Act.

Mr. Leone: Deputy, I want him taken out of here.

Mr. Galena And Erie County's Administrative Code.

Mr. Leone: And I want him charged.

Mr. Galena: You are in violation of the Pennsylvania Sunshine Act.

Mr. Leone: I want him charged. Do you hear, that's harassment. You're not going to get away . . .

Mr. Galena: I'm part of the assembly, I object to your proceedings.

Mr. Leone: We'll file charges against you.

Mr. Galena: You're welcome to do so.

Id. at 148.

10

A sheriff's deputy then escorted Galena from the Council meeting and the building. Notwithstanding Leone's comments at the meeting, neither Leone nor anyone else filed charges against Galena. Leone, however, sent Galena a letter stating that, as chairperson of the Council, it was Leone's responsibility to maintain decorum and preserve order at Council meetings, and that if Galena disrupted meetings in the future he could be banned from Council meetings.

On April 30, 2007, Galena initiated this case by filing a complaint, later amended in March 2008, against Leone and all of the other members of the Council, principally on account of the events of March 20, 2007. In his amended complaint Galena charged that Leone violated his First Amendment rights to speak at a public meeting and to petition the government for redress of his grievances. Galena also accused Leone of attempting to intimidate him by sending the warning letter to which we have referred. Finally, Galena alleged that the Council's procedure at a February 19, 2008 Council meeting, almost one year after the March 20, 2007 meeting, violated the Administrative Code and the Pennsylvania Sunshine Act, 65 Pa. Cons. Stat. Ann. § 701 et seq. (West 2000). Galena predicated the first three counts of his amended complaint on federal law and the last count on state law.

On June 12, 2008, the District Court, acting on Galena's motion, dismissed all the defendants from the case with prejudice except for Leone. On August 15, 2008, Galena abandoned his claims against Leone except for those under the First Amendment, and, accordingly, Galena's count regarding the February 19, 2008 meeting no longer could afford the basis

11

for a verdict or judgment in his favor.[5]  Thus, the allegations in the case were narrowed considerably from the pleading stage to the trial stage both with respect to parties and issues.

The parties tried the case to a jury on the First Amendment issues in August 2009.  Galena testified describing his March 20 confrontation with Leone and explaining the reasons for his objection on that day.  Galena interpreted the Administrative Code to require that Council members introduce proposed ordinances to the public by placing them on a Council meeting agenda and making them available 72 hours before their first reading.  Furthermore, Galena testified that the Council could not vote on any ordinance until at least seven days elapsed after the ordinance's first reading, unless the ordinance concerned an emergency.  Galena's research revealed that frequently during 2006 and 2007 the Council had not complied with the prescribed formal procedure for the adoption of ordinances as it circumvented that procedure by waiving the first reading of some ordinances and finally voting on them at the meeting at which they were introduced.  According to Galena, the Council followed this truncated procedure 64 times in 2006 and either 14 or 15 times between January and March in 2007.  Galena considered this practice to be in violation of the

---

[5] Though we are not aware of any precedential officially reported Pennsylvania state court decision on the point, our review of the Sunshine Act leads us to believe that the Act probably does not provide for a damages remedy for its violation.  We, however, do not make a determination on this point inasmuch as Galena has not made a claim in this case for damages for a Sunshine Act violation.

Pennsylvania Sunshine Act because the Council was depriving the public of its right to review the ordinances -- and thus, expenditures of county tax dollars -- before the Council voted on them.

Galena stated that on March 20, 2007, he chose not to speak during the Hearing of the Public portion of the meeting and, instead, later attempted to voice his objection to the Council's violation of the prescribed procedures during the New Business portion of the meeting because he could not predict prior to that time whether the Council during the New Business portion of the meeting would move an ordinance from first to second reading. Galena nevertheless testified that, based on the Council's prior history with respect to the adoption of ordinances, "there was a good chance that they would move first readings to second readings" at the March 20 meeting. App. at 34. Galena acknowledged that previously when he had addressed the Council during the Hearing of the Public portion of Council meetings, it had permitted him to speak without incident. During Galena's testimony, his attorney played a video and audio recording of the March 20 incident for the jury.

Leone testified that he had served on the Council for 32 years and had been its chairperson during approximately eight separate year-long tenures. He also testified that during his 32 years on the Council, the only time that he had had someone removed from a meeting was when he had Galena removed on March 20, 2007. Leone stated that he personally was not acquainted with Galena but knew him through Galena's attendance at Council meetings. Leone also testified that he

13

may have spoken with Galena on one occasion prior to March 20, 2007, about a matter before the Council on which he and Galena were in agreement. Leone further testified that he bore no personal animosity toward anyone because of that person's opinions, but he believed that the Code restricted members of the public to speaking only during the part of the Council meetings designated for public comment. Leone stated that, "quite a few times" on prior occasions, he had found Galena's comments to be "on the mark," although there were also "a few times that he wasn't." Id. at 73-74.

Leone testified that he did not recognize or understand the basis for Galena's objection at the time that Galena made it on March 20. Leone stated that when he ruled Galena out of order he did not know what Galena would say and he would have removed anyone who interrupted the meeting regardless of the content of that person's speech. Leone also testified that, although the Council solicitor had not briefed him about his obligations under the Sunshine Act, the solicitor told him that the Council was in compliance with the Act. Leone stated that he was not aware of any Sunshine Act provision that allows any person to object at any time to a perceived violation of the Act.

The sheriff's deputy who had been present at the meeting testified that during the incident Galena was calm while Leone's demeanor was "pretty animated." Id. at 56. Joseph Giles, a Council member who was present on March 20, testified that Galena's objections were not insulting, threatening, insolent, slanderous, or obscene. Giles, however, also testified that when he had been chairperson of the Council, if a member of the audience had spoken at a time other than during the Hearing of

14

the Public portion of the meeting he would have called that person out of order. Giles also testified that Galena was being "boisterous," and that if a member of the public refused to "go through the normal process in order to record comments," he would have acted as Leone did. Id. at 62-63.

At the close of Galena's case, Leone moved to dismiss the amended complaint, arguing that Galena did not provide evidence that Leone intended to suppress Galena's speech based on Galena's viewpoint. The District Court denied the motion but stated that it might revisit the issue later in the case. As we have indicated, the jury returned a verdict finding that Leone violated Galena's First Amendment rights by having him removed from the Council meeting and awarding him $5,000 in compensatory damages. The jury, however, did not award punitive damages.

The parties followed the verdict with their post-trial motions. Leone again moved for judgment as a matter of law, but this time the District Court granted his motion, finding that Galena did not adduce legally sufficient evidence that Leone had suppressed Galena's speech because of either an animus toward him or a disagreement regarding his proposed message. Galena filed motions for attorney's fees and costs, but, in light of the Court having granted Leone's motion for judgment as a matter of law, it denied Galena's motions as moot. [6] Galena filed

---

[6] Unquestionably, inasmuch as the District Court granted Leone judgment as a matter of law, Galena's motions were moot because the losing party in a section 1983 action is not entitled to attorney's fees and costs. See 42 U.S.C. § 1988 (providing

15

timely notices of appeal from the Court's orders.

### III.    JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction over Galena's First Amendment civil rights claims under 28 U.S.C. §§ 1331, 1343(a)(3) and (4) and 42 U.S.C. § 1983 and had jurisdiction over Galena's state law claim under 28 U.S.C. § 1367.  We have jurisdiction on the appeal from the orders of the District Court under 28 U.S.C. § 1291.

We exercise plenary review of the District Court's grant of judgment as a matter of law and apply the same standard as the District Court: the motion "should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (internal quotation marks and citation omitted); see also Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993) (stating that a court may grant a motion for judgment as a matter of law "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference,

---

for attorney's fees to the prevailing party); Luria Bros. & Co. v. Allen, 672 F.2d 347, 357-58 (3d Cir. 1982) (losing party in a section 1983 case is not entitled to attorney's fees).  In light of our disposition of the case, Galena's motions remain moot.

16

there is insufficient evidence from which a jury reasonably could find liability"). "[A] directed verdict is mandated where the facts and the law will reasonably support only one conclusion." McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S.Ct. 807, 818 (1991).

## IV.  DISCUSSION

### A.  Issues on Appeal

Galena raises two overarching issues on this appeal. First, he argues that he presented legally sufficient evidence to support the jury's finding underlying its verdict that Leone acted with intent to suppress his speech based on his viewpoint and identity when Leone ejected him from the Council meeting. Second, Galena contends that the Sunshine Act's public objection provision allowed him to speak at any time during the Council meeting, and has "direct implications on the First Amendment rights of a citizen speaker at a government meeting." Appellant's br. at 22. Galena also objects to the District Court's ruling that Galena waived his Sunshine Act claims prior to the trial. Id. Galena, in making these arguments, challenges the Administrative Code insofar as it restricts the public's time to speak to the Hearing of the Public portion of a meeting. Specifically, Galena believes that the Code does not allow an adequate alternative method of communication for a speaker who wishes to object to the Council's procedures at a time other than the Hearing of the Public portion of Council meetings.

17

B.     The First Amendment and Section 1983

For Galena to succeed in this action he had to satisfy the section 1983 requirement that a plaintiff show that the defendant acted under color of state law, and, while so acting, deprived the plaintiff of his rights under the Constitution or laws of the United States.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55 (1988).  Of course, there is no doubt that Leone was acting under color of state law when, in his official capacity as chairperson of the Council, he ordered the deputy sheriff to escort Galena from the Council meeting. See Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994) ("[A]cts of a state or local employee in her official capacity will generally be found to have occurred under color of state law.").  Indeed, Leone does not contend otherwise.  Galena asserts that Leone deprived him of his First Amendment rights to free speech and to petition the government for redress of his grievances.[7]

In our consideration of this case we recognize that, though the First Amendment's protection of freedom of expression is not inviolate, when a public official excludes a

---

[7]  Inasmuch as, for purposes of this case, the tests under the speech and petition clauses of the First Amendment are the same, we will discuss the claims together as a single claim.  See, e.g., Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 281 (3d Cir. 2004) (discussing speech and petition clause claims together). We note that the District Court, without objection, in submitting the case to the jury also combined the claims under both clauses.

18

citizen from a public meeting, the official must not be acting in violation of that amendment. See Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006). Therefore, we address the question of whether Leone, in excluding Galena from the Council meeting, violated the First Amendment.

C.     Forum Analysis

When a First Amendment free speech challenge arises from a restriction on speech on government owned or controlled property, as was the case here, the classification of the forum determines the contours of the First Amendment rights that a court recognizes when reviewing the challenged governmental action. See United States v. Marcavage, 609 F.3d 264, 274 (3d Cir. 2010) ("The degree of First Amendment protection a speaker enjoys depends on the type of forum in which his expressive activity occurred."); Kreimer v. Bureau of Police of Morristown, 958 F.2d 1242, 1255 (3d Cir. 1992). We are concerned here with three categories of public forums: (1) the traditional public forum; (2) the designated public forum; and (3) the limited public forum.[8]

_____

[8]There appears to be some inconsistency in federal courts' opinions, even those of the Supreme Court, as to whether a limited public forum is a separate category or a subset of a designated public forum with a third category of forums being "nonpublic forums". Compare Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678, 112 S.Ct. 2701, 2705 (1992) ("The second category of public property is the designated public forum, whether of a limited or unlimited

19

Traditional public forums include public streets, parks, and other public areas traditionally devoted to assembly and debate. See Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677, 118 S.Ct. 1633, 1641 (1998). A government entity creates a designated public forum when it intentionally designates property that traditionally has not been regarded as a public forum for use as a public forum. Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez, 130 S.Ct. 2971, 2984 n.11 (2010). In both traditional public forums and designated public forums the government may enact reasonable time, place, and manner restrictions on speech, but any restrictions on the content of speech must be tailored narrowly to serve a compelling government interest. See Pleasant Grove City v. Summum, 129 S.Ct. 1125, 1132 (2009).

character-property that the State has opened for expressive activity by part or all of the public."); with Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez, 130 S.Ct. 2971, 2984 n.11 (2010) (listing limited public forum as a separate third category and not discussing nonpublic forums). Recently the Court has used the term "limited public forum" interchangeably with "nonpublic forum," thus suggesting that these categories of forums are the same. See Martinez, 130 S.Ct. at 2985 (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 49, 103 S.Ct. 948, 957 (1983)); Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106, 121 S.Ct. 2093, 2100 (2001). Because the continued existence vel non of a "nonpublic forum" category has no bearing in this case, we need not dwell on the possible distinction between limited public forums and nonpublic forums.

20

The First Amendment prohibits restrictions based on a speaker's viewpoint in both types of forums. Id.

In contrast to traditional and designated public forums, a governmental entity creates a limited public forum when it provides for "a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects." Id.; Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 225 (3d Cir. 2003). In Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004), we were concerned with restrictions on speech in a limited public forum. There we held that the citizens' forum portion of the Indiana Township Board of Supervisors meeting was a limited public forum because "public bodies may confine their meetings to specified subject matter . . . matters presented at a citizen's forum may be limited to issues germane to town government." Id. at 281 (citations and internal quotation marks omitted). In limited public forums, to avoid infringing on First Amendment rights, the governmental regulation of speech only need be viewpoint-neutral and "reasonable in light of the purpose served by the forum[.]" Good News Club v. Milford Cent. Sch., 533 U.S. 98, 107, 121 S.Ct. 2093, 2100 (2001) (citation and internal quotation marks omitted).[9]

---

[9] We have stated that "we have generally applied to limited public fora the constitutional requirements applicable to designated public fora." Whiteland Woods, L.P. v. Twp. of West Whiteland, 193 F.3d 177, 182 n.2 (3d Cir. 1999) (citing Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth., 148 F.3d 242, 248-55 (3d Cir. 1998)). In light of Pleasant

21

Here, the District Court instructed the jury that the Erie County Council meeting was a limited public forum. Galena, in part of his brief, agrees with the limited forum designation but in another part he argues that the District Court's designation of the Council meeting as a limited public forum was erroneous.[10] But, as we discuss in the next section, Galena has waived the argument that the District Court's recognition of the Council meeting as a limited public forum was erroneous. In any event, even if he properly had presented and preserved his argument with respect to the misclassification of the forum so that we found it necessary to address the argument on its merits, we would conclude that Galena's position would not be meritorious. It is perfectly clear that the District Court was correct when it held that the March 20 Council meeting was a limited public forum inasmuch as the meeting was held for the limited purpose of governing Erie County and discussing topics related to that governance. See Perry, 460 U.S. at 46 n.7, 103 S.Ct. at 955 n.7; see also Rowe v. City of Cocoa, 358 F.3d 800, 803 (11th Cir. 2004) (per curiam) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at

---

Grove, this statement may no longer be good law.

[10]Galena indicates that the District Court's "analysis of a 'limited forum' is fatally deficient because it considered the Sunshine Law irrelevant to the proceeding," but then states that "Galena's right to speak out in this 'limited forum' on March 20, 2007, is clear from the straight forward prose in the Pennsylvania Sunshine Law 'objection' provision." Appellant's br. at 24, 26.

22

hand.").

In a limited public forum, such as the Council meeting, "content-based restraints are permitted, so long as they are designed to confine the forum to the limited and legitimate purposes for which it was created." Eichenlaub, 385 F.3d at 280 (internal quotation marks and citation omitted). The government may not "regulat[e] speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 829, 115 S.Ct. 2510, 2516 (1995). The government, however, may restrict the time, place and manner of speech, as long as those restrictions are reasonable and serve the purpose for which the government created the limited public forum. Pleasant Grove, 129 S.Ct. at 1132. A time, place, and manner restriction on speech is reasonable if it is (1) content-neutral, (2) narrowly tailored to serve an important governmental interest, and (3) leaves open ample alternatives for communication of information. See Ward v. Rock Against Racism, 491 U.S. 781, 791-803, 109 S.Ct. 2746, 2753-60 (1989). However, even if a limitation on speech is a reasonable time, place, and manner restriction, there is a First Amendment violation if the defendant applied the restriction because of the speaker's viewpoint. See, e.g., Monteiro, 436 F.3d at 404. Keeping these principles with respect to the categorization of public forums in mind, we now address Galena's arguments starting with the Sunshine Act.

D.    The Sunshine Act

The Pennsylvania General Assembly enacted the

23

Sunshine Act to "provide citizens with an opportunity to observe the deliberation, policy formulation and decision-making processes of public agencies." Lee Publ'ns, Inc. v. Dickinson Sch. of Law, 848 A.2d 178, 180 n.2 (Pa. Commw. Ct. 2004) (citing 65 Pa. Cons. Stat. Ann. § 702 (West 2000)). The Sunshine Act requires that: (1) "[o]fficial action and deliberations by a quorum of the members of an agency. . . take place at a meeting open to the public[11];" (2) "the vote of each member who actually votes on any . . . ordinance. . . must be publicly cast . . . ;" (3) minutes be kept of agency meetings; and (4) public notice be given in advance of the meeting in a manner directed by the Act. 65 Pa. Cons. Stat. Ann. §§ 704, 705, 706, 709 (West 2000). The "Public participation" section of the Act states that "[a]ny person has the right to raise an objection at any time to a perceived violation of [the Sunshine Act] at any meeting of a board or council of a political subdivision or an authority created by a political subdivision." Id. § 710.1(c).

It is a matter of some interest, inasmuch as Galena views the Sunshine Act as expanding First Amendment rights, that the Act includes a provision that "[t]he board or council has the option to accept all public comments at the beginning of the meeting." 65 Pa. Cons. Stat. Ann. § 710.1(a). The Administrative Code's provision for public comments during the Hearing of the Public at the outset of the meeting would seem to be in accordance with that provision as that portion of the

---

[11] Agencies include "any board, council, authority or commission of the Commonwealth or of any political subdivision of the Commonwealth . . . ." 65 Pa. Cons. Stat. Ann. § 703 (West 2000).

meeting is the first item on the Council's agenda following formal starting procedures.

Galena argues that section 710.1(c), which allows any person to raise a contention that there has been a Sunshine Act violation at any time, pre-empts the Administrative Code's limitation of public comments to the Hearing of the Public portion of Council meetings and supports his claim that he had a First Amendment right to object to the Council's decision to move an ordinance immediately from the first reading to the second reading when he attempted to raise the issue. Moreover, he believes that the Council was employing a procedure in violation of the Sunshine Act when, in acting on an ordinance, it followed the truncated procedure that Galena sought to challenge. Galena also argues that the Sunshine Act "offers the key to unlock a limited forum." Appellant's br. at 28. He thus seems to believe that the Pennsylvania General Assembly can expand the scope of First Amendment rights beyond the limits on them that otherwise would exist. Furthermore, Galena contends that Leone's purported ignorance of the Sunshine Act did not give him an excuse to justify his suppression of Galena's First Amendment rights.

The District Court held that Galena waived the foregoing Sunshine Act arguments because he did not ask the Court to submit his contentions to the jury and did not object to the Court's omission of them during its instructions to the jury. The Court pointed out that even though the amended complaint contained a count asserting that the Council had committed a Sunshine Act violation, though on a date other than March 20, 2007, Galena voluntarily moved to dismiss that count before the

25

Court sent the case to the jury and the Court did as Galena asked.[12]  Moreover, the Court reasoned that, even if the Sunshine Act claims had been presented properly, they would not have been legally relevant to Galena's First Amendment claim.

Clearly, the District Court was correct both procedurally and substantively with respect to the Sunshine Act issues.  When Galena voluntarily waived his Sunshine Act claim prior to trial, even laying aside the fact that the claim as pleaded did not relate to the March 20, 2007 events, he removed the issue of the Council's violation of the Act, at least as a basis for the return of a verdict in his favor, from the jury's consideration.  Moreover, as Leone correctly points out, the jury instructions did not instruct the jury with respect to either the contents of the Sunshine Act or any legal interpretation of the Act.  In fact, at the outset of its charge the Court told the jury that "[i]t is not your function in this case to determine whether there was or was not a violation of the Pennsylvania Sunshine Law and/or any provision of the Erie County Administrative Code.  In other words, those issues are irrelevant and should play no part in your deliberation in this case." Addendum to app. at 2.  Galena does not claim in his brief that he objected to the charge, and we see no indication in the record that he lodged such objection, and thus the possible effect of a violation of the Sunshine Act was taken out of this case.

---

[12] As we have indicated, the Sunshine Act claim related to an action the Council took at a meeting on February 19, 2008.

26

In any event, even though Leone's enforcement of the Code in restricting Galena's speech could have raised a question of the validity of the Code under the Sunshine Act, any question of whether the Code, as written or applied, was inconsistent with the Act would have been separate from the question of whether the Code's provisions unreasonably restricted the First Amendment rights of a member of the public who wanted to speak at a time other than the Hearing of the Public portion of a meeting. Thus, even if we held that Leone violated the Sunshine Act when he had Galena removed from the meeting, our result would be no different on this appeal in this First Amendment case. Moreover, Galena does not assert in his brief that in the District Court he argued that the Code did not comply with the Sunshine Act and thus the District Court did not determine whether the Code complied with the Act. Therefore, because Galena does not now argue that he is entitled to a reinstatement of the verdict on the discrete basis that there was a Sunshine Act violation, did not argue in the District Court that the Code did not comply with the Sunshine Act, and did not object when the Court instructed the jury not to determine if there had been a violation of the Sunshine Act, we will not address the question of whether the Code, as written or applied, is valid under the Sunshine Act.

Galena also argues that the District Court erred because it did not factor into its forum analysis the Sunshine Act's provision allowing objections to be made at any time during a meeting subject to the provisions of the Act, such as the March 20 meeting. In Galena's words in his brief, the Sunshine Act "unlock[ed] a limited forum." Appellant's br. at 28. As we discussed above, the government's intent in creating the forum,

27

as well as the extent of the permissible use by the public within the forum, determines the designation of the type of forum. See Brody by and Through Sugzdinis v. Spang, 957 F.2d 1108, 1117 (3d Cir. 1992). Consequently, a state law could be relevant when a determination of the designation of a forum is made if the law opened a meeting to a wider range of public expression than normally is allowed in a limited public forum. Galena, however, did not advance this theory on how the Sunshine Act could have influenced the forum analysis in his proposed jury instructions. Furthermore, we do not find anything in the record supporting a conclusion that Galena objected to the District Court's jury instructions when the Court, in instructing the jury, treated the Council meeting as a limited public forum. Therefore, Galena has waived his argument that the Court erred in not factoring in the Sunshine Act into its forum analysis. See Fed. R. Civ. P. 51(c)(1) (a party waives its objection to jury instructions unless it objects "stating distinctly the matter objected to and the grounds of the objection"); Thabault v. Chait, 541 F.3d 512, 525 (3d Cir. 2008) (applying Fed. R. Civ. P. 51).

In sum, Galena's Sunshine Act arguments were not presented to the jury in the District Court's instructions, and, inasmuch as Galena did not request the Court to present them in the instructions and did not object to their not having been presented, he has not preserved any argument with respect to the Court not presenting them to the jury so as to justify our consideration of his Sunshine Act arguments on this appeal.[13]

---

[13] We are aware that the general rule that a court of appeals does not consider an issue that was not raised in the district court may

28

Further, as the Court noted, the possible questions of whether Galena had a right to speak under the Sunshine Act and whether Leone violated the Act by ejecting him from the Council meeting are distinct from the issues in this First Amendment case and the Court told the jury not to consider possible Sunshine Act violations in its deliberations. Moreover, though Leone's actions may have violated the Sunshine Act, such a violation would not per se infringe on Galena's First Amendment rights because a statute can create free speech rights under state law beyond those that the First Amendment recognizes.[14]

Accordingly, the questions we address on the merits on this appeal, when taking into account well-established practices concerning the procedures for advancing and preserving contentions, are whether Galena's viewpoint or identity motivated Leone when he had Galena removed from the meeting or whether, in his role as chairperson of the Council, he was enforcing a reasonable time, manner, and place restriction in a limited public forum. In fact, the Court instructed the jury to decide these issues.

---

be relaxed if "the public interest or justice so warrants," Appalachian States Low-Level Radioactive Waste Comm'n v. Pena, 126 F.3d 193, 196 (3d Cir. 1997), but we see no reason to relax the rule here.

[14]Of course, we realize that an official action in some circumstances could violate both the First Amendment and the Sunshine Act.

E.      Validity of Time, Place, and Manner Restriction

Our recognition of the limited role of the Sunshine Act on this appeal takes us to our next inquiry which focuses on Galena's argument under the First Amendment concerning the validity of the Administrative Code's restriction on public participation.  In particular, we consider whether the Code left Galena with alternative means of communicating the content of his objection to the Council's procedures.[15]  According to Galena, he could not have objected during the Hearing of the Public portion of the Council meeting to the Council's procedures in adopting an ordinance as that portion of the meeting preceded the New Business portion of the meeting when the Council considers the adoption of ordinances.  Therefore, Galena contends that the restriction on public participation did not provide him with an adequate alternative means of communicating his message concerning the Council's procedure in adopting the ordinance.

Leone responds, and the District Court held, that Galena waived this argument as well as his Sunshine Act arguments, inasmuch as the question of whether a regulation leaves open alternative means of communication is a question of fact that,

---

[15] As we stated earlier, there are two other considerations in determining whether a restriction is reasonable: (1) whether the restriction is content neutral, and (2) whether it is narrowly tailored to serve an important governmental interest.  See Ward, 491 U.S. at 791-803, 109 S.Ct. at 2753-60.  Inasmuch as Galena did not properly raise these issues in the District Court, nor does he raise them on appeal, we will not discuss these two factors.

without objection by Galena, the Court never presented to the jury for its consideration.  Leone further argues that even if Galena had not waived the issue, Galena's right to voice his objection during a subsequent Council meeting provided him with an adequate alternative means to communicate his message.

Clearly, the District Court's ruling was correct on this waiver issue.  The reasonableness of a time, place or manner restriction on speech presents a question of law but the determination involves three subsidiary elements: the challenged restriction must be (1) content-neutral, (2) narrowly tailored to serve an important governmental interest, and (3) leave open ample alternatives for communication of information.  See Ward, 491 U.S. at 791-803, 109 S.Ct. at 2753-60.  The three subsidiary elements of the reasonableness question pursuant to which a court determines the validity of the restriction are questions of fact which should be submitted to the jury, except where the evidence applicable to a particular element entitles a party to judgment as a matter of law on that element.  See McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009).

But the only factual question that the District Court told the jury that it had to resolve in determining whether Leone violated Galena's First Amendment rights in having him ejected from the March 20 meeting was whether Leone intended to restrict Galena's speech because of its content or his identity, or whether he intended to enforce a reasonable restriction on the time, place, and manner of that speech.[16]  The jury instructions

---

[16] The District Court charged the jury to answer the following

31

assumed that the restriction, as the Code is applied, on when a member of the public may speak at a meeting was reasonable, and Galena does not point to any place in the record showing that he requested that the Court give an instruction on adequate alternative means of communication or at which he objected to the lack of such an instruction in its charge. In fact, even on this appeal, Galena does not contend that the jury instructions were flawed or incomplete.[17] To the contrary, he argues that the jury verdict returned on the instructions should be upheld. We thus are constrained to treat the Court's charge to the jury as having correctly set forth the law. Furthermore, even aside from the fact that Galena did not object to how the Court submitted the case to the jury, he did not move for the Court to hold that the restriction on his speech was not reasonable as a matter of law, though he does contend on this appeal that, as a legal matter, there was not an adequate alternative means of communicating his message.

questions: (1) whether "in ruling [Galena] out of order and ordering his removal from the March 20, 2007 meeting of County Council, [Leone] acted with the intention of imposing reasonable restrictions on the time, place and manner of [Galena's] speech to preserve order and decorum at the meeting," or (2) whether "[Leone] acted with the intention of suppressing [Galena's] speech based on its message or based on the identity of the speaker." Addendum to app. at 9-10.

[17] In this opinion we make numerous references to the District Court's charge to the jury and observe that in his brief Galena does not claim to have objected to the charge in any respect. Indeed, Galena never mentions the Court's charge in his brief.

32

Although we have focused to a large extent on procedural issues, as it is appropriate to do, we nevertheless hold that, as a substantive matter, it is clear from the record that there were adequate alternative means for Galena to communicate his objection to the Council's procedure in adopting ordinances. The Supreme Court has required that an alternative means of communication provide only a "reasonable opportunity" for communication of the speaker's message. See City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 54, 106 S.Ct. 925, 932 (1986); see also Menotti v. City of Seattle, 409 F.3d 1113, 1138 (9th Cir. 2005) ("[T]he Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of particular community or setting.") (internal quotation marks and citations omitted)).

Galena argues that he would have needed a "crystal ball" to predict during the Hearing of the Public portion of the March 20 meeting what actions the Council would take following that portion of the meeting. Appellant's br. at 16. Thus, he contends that he could not be expected to object to something that he did not know would happen. At the March 20 meeting, however, another member of the public challenged the Council's procedure of moving ordinances from the first reading to the second reading, a process he described as "bumping first readings to second readings." App. at 141. Moreover, as the District Court pointed out, Galena had been tracking the number of times the Council moved an ordinance from the first reading to the second reading and found that in the 15 months prior to the March 20 meeting, the Council employed this procedure

33

approximately 80 times. Thus, Galena did not need to be a fortune teller to recognize that the Council might employ this procedure at the March 20 meeting and to object to the procedure before it happened. Furthermore, if Galena wanted to object to the procedure as it related to the specific ordinance being considered on March 20, 2007, he could have done so at the Hearing of the Public portion of a subsequent Council meeting.[18]

We recognize that Galena may deem that the alternative opportunities allowing him to object to the Council's procedures before or after the New Business portion of the March 20 meeting were inadequate inasmuch as he may believe that an objection made at the time the Council is considering a proposed ordinance is the best time to object to an irregularity in the Council's procedure in considering the adoption of that ordinance for the objection might lead the Council to change its procedure with respect to that ordinance. Though we acknowledge that such a view would not be unreasonable, the First Amendment does not guarantee a speaker the most effective means of communication of the his message. Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640,

---

[18]We also point out that when the Council took up the adoption of an ordinance on March 20, it was considering the type of business that often came before it in the regular course of its proceedings. Thus, this case does not involve a situation in which in the New Business portion of the meeting the Council undertook to deal with a matter completely different from its usual business, though we do not suggest that if it had done so our result on this appeal would have been different.

34

647, 101 S.Ct. 2559, 2564 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."); McTernan, 564 F.3d at 657 ("[T]he First Amendment does not guarantee a speaker an absolute right to actual conversation with his audience in every circumstance.").

Here, as we have indicated, Galena could have delivered his message to his intended audience at the Hearing of the Public portion of the March 20 meeting or, if he wished to address a specific action the Council took after the Hearing of the Public portion of the March 20 meeting, he could have conveyed his objection during the Hearing of the Public portion of the next Council meeting, or, indeed, during any future Council meeting. Thus, the Hearing of the Public portion of the Council's meetings provided Galena with a reasonable opportunity to communicate his message to his intended audience while respecting the Council's interest in its meetings being efficient and orderly. Therefore, even if Galena properly had raised in the District Court the issue of the adequacy of the alternative means for him to communicate his objection, we would find, as a matter of law, that the Administrative Code's restriction of public comments to the Hearing of the Public portion of the Council's meetings did not deprive Galena of adequate alternative opportunities to convey his views.

F.      Intent to Suppress Speech Based on Viewpoint or Identity

The District Court determined that Galena did not submit sufficient evidence to show that Leone acted with intent to

35

suppress his speech based on Galena's identity or disagreement with Galena's message and the challenge to this determination gives rise to an overarching issue on the appeal. Galena points to the following evidence which he believes contradicts the Court's holding: Galena testified that he frequently attended Council meetings and had been critical of its expenditure of tax dollars; on prior occasions, Leone scowled, grimaced, grinned or laughed at his comments during the Hearing of the Public portion of meetings but did not do so when other speakers made comments; and the deputy sheriff present at the March 20 meeting, described Galena's demeanor during the confrontation with Leone as calm, and Leone's demeanor as "animated." App. at 55-56. The videotape of the incident corroborates the deputy sheriff's account of the incident.

The District Court, however, viewed the evidence in light of other evidence introduced at the trial that was uncontroverted: namely Leone's testimony that he served on the Council for 32 years and was involved in drafting the Administrative Code; he understood that the Code allowed public participation only during the Hearing of the Public portion of meetings and was unaware of a Sunshine Act provision allowing the public to object at meetings;[19] Galena's testimony that he spoke at 14 or

---

[19] We do not suggest that Leone's ignorance of the provisions of the Sunshine Act in any way enhances his position on this appeal for if Leone violated the Act his ignorance of its content would not excuse his action. But on this appeal it does not matter whether Leone violated the Act because, for the reasons we already have set forth, evidence of the violation would not strengthen Galena's position under the First Amendment as a

15 Council meetings before March 20, 2007, and on every occasion except for one, he spoke during the Hearing of the Public portion of the meeting; according to a transcript admitted into evidence and Leone's testimony, Galena spoke during the business portion of a January 2, 2007 Council meeting and Leone pounded his gavel and stated "You keep that up, I'm going to have you taken out. You had your chance to speak." Id. at 111-12, 157; Leone testified that the March 20 incident was the first occasion in his 32 years on the Council that he had a member of the public removed from a meeting; and finally, other members of the public including Galena, frequently spoke out against the Council and one member of the public addressed the Council's procedure of moving an ordinance from the first reading to the second reading during the Hearing of the Public portion of the March 20 meeting without interruption from Leone or other Council members.

In reviewing this evidence we, like the District Court, must "draw all reasonable inferences in favor of the nonmoving party" and we "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). Thus, where a finding of a constitutional violation must be predicated on a determination that the defendant in suppressing speech acted with an improper intent and the jury returns a verdict for the plaintiff, "judgment as a matter of law will be granted to the defendant only if that verdict is not based on sufficient

violation of the Act is not a per se violation of the First Amendment and the Act does not expand the First Amendment rights of members of the public.

37

evidence." Monteiro, 436 F.3d at 406. But a scintilla of evidence supporting a conclusion that Leone had an improper motivation when having Galena removed is not sufficient. Rather, there must be enough "evidence upon which the jury could properly find a verdict" for Galena for his case to survive Leone's motion for judgment as a matter of law. Lightning Lube, 4 F.3d at 1166 (citation and internal quotation marks omitted).[20]

The most telling evidence that refutes any reasonable inference that there was viewpoint discrimination is the manner in which the March 20 confrontation unfolded. Indeed, that evidence conclusively establishes that this case simply cannot be sustained as a First Amendment case based on the restriction of Galena's attempt to state his viewpoint that the Council was violating the Sunshine Act[21] in adopting the ordinance on March 20. At the March 20 meeting, when the Council considered the ordinance, Galena stated that "I have an objection" after which Leone banged his gavel. App. at 7. Galena then again stated that "[I have] an objection" and Leone called Galena out of order. Id. Galena, undeterred, then stated "You are in violation

---

[20] Of course, our reference to Galena's evidence does not signal that we are weighing that evidence against Leone's evidence. To the contrary, we are describing Galena's evidence because it is necessary to do so in determining whether the evidence adequately supported the verdict.

[21] We realize that Galena also said that Council was violating the Administrative Code but that allegation adds nothing to this discussion.

. . ." at which point, before Galena could finish his sentence, Leone interrupted and stated that if Galena kept it up he would have him taken out. Id. Galena objected a third time, and finally stated that the reason for his objection was that there was a violation of the Sunshine Act. It was then that Leone ordered the deputy sheriff to remove Galena. Galena did not state that the Council was violating the Sunshine Act until after Leone warned him twice that he was out of order and warned him that further objections would result in his ejection from the meeting. Id.

In light of these facts, it is impossible to conclude that hostility to Galena's viewpoint motivated Leone when he declared Galena out of order and attempted to silence him because Leone took these actions before he knew the basis for Galena's objection. Indeed, as we explained above, Galena in his brief acknowledges this point. In fact, Galena relies to a degree on Leone's ignorance of the basis for his objection as he believes that it was wrong for Leone to act before he knew that basis.

We recognize, of course, that when Leone ejected Galena from the meeting he knew why Galena was objecting. But that knowledge does not affect our analysis for Leone said to Galena that "if you keep it up I'll have you taken out" before Galena mentioned the Sunshine Act. Id. at 148. The record here precludes a finding that Leone had Galena removed because Galena contended that there was a Sunshine Act violation.

We also note that Leone stated that he did not know or understand the basis for Galena's objections when he declared

39

Galena out of order and that he would have him taken out of the meeting without such knowledge.[22] Indeed, Galena acknowledged that Leone declared him out of order before he specified the basis for his objection and the minutes of the March 20 meeting confirm that this was so. Thus, this case cannot be understood as involving a situation in which Leone reacted to Galena's comments because Galena complained to the Council that there was a Sunshine Act violation.

Overall, it is beyond doubt that Leone restricted Galena's speech because Leone was enforcing the Administrative Code and not because of Galena's reason for objecting. Indeed, Galena essentially acknowledges this point in his brief in which he sets forth that he "testified that he did not express the contents of 'my objection' because Mr. Leone refused to recognize the objection." Appellant's br. at 5.

We also point out that even if there had been evidence that could support a finding that Leone knew the basis for Galena's objection when Leone ruled him out of order, our result would be the same. The Administrative Code is applied to limit all comments of the public to the Hearing of the Public portion of a meeting regardless of whether the proposed comment relates directly to a matter that the Council then is addressing. Thus, the restriction on making comments is divorced entirely from the contents of the comments and therefore the chairperson's determination to enforce the

---

[22] Of course, by the time that the deputy sheriff took Galena out of the meeting, he had stated the basis for his objection.

40

restriction does not take into account the viewpoint that the speaker intends to set forth. Accordingly, we would reach the same result on this appeal even if Galena had initiated his comments on March 20 by stating that "The Sunshine Act is being violated." Though Leone might have been violating the Sunshine Act if he had Galena ejected for persisting in his comments, Leone would not have been violating the First Amendment as enforced through 42 U.S.C. § 1983 because Leone's actions would not have been taken to enforce a viewpoint restriction and Galena still would have had an adequate alternative means of communication to express his views.

Notwithstanding the irrefutable record of the March 20 meeting, in an attempt to demonstrate that Leone harbored animus toward his message, Galena points to Leone's reactions to his comments during the Hearing of the Public portions of previous Council meetings. Specifically, Galena testified that on prior occasions when he spoke to the Council, Leone scowled, grimaced, grinned, and "almost laugh[ed]" but Leone did not have similar reactions when other persons spoke. App. at 26-27.

Galena argues that the jury could have attributed an improper motive to Leone because of his visible annoyance when Galena called the Council members "tax spenders." Appellant's br. at 27-28. Galena also argues that Leone channeled his frustrations with public comments at him and suppressed his speech because Leone did not appreciate having "his authority questioned." Id. at 19-20. According to Galena, Leone's comments on March 20 to the members of the public

who had spoken during the Hearing of the Public, telling them to "be careful" and that the Council is "tired of some of these issues being brought up," demonstrate that Leone was annoyed by public comments at Council meetings. Id. at 12. Galena further argues that the sheriff's report of the March 20 meeting and the video of the confrontation between him and Leone show that Leone was speaking in an elevated voice while Galena remained calm during the incident. Galena maintains that the jury, from observing the demeanors of both Leone and Galena on videotape, reasonably could have concluded that Galena's identity motivated Leone to have him removed from the meeting. Id. at 21.

Like the District Court, we view Leone's behavior toward Galena in light of other evidence presented at the trial that was uncontroverted and unimpeached. See Reeves, 530 U.S. at 151, 120 S.Ct. at 2110 (applying Fed. R. Civ. P. 50, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses") (internal quotation marks and citation omitted). But even giving Galena the benefit of all reasonable inferences, the evidence is insufficient to justify a finding that it was animus toward Galena or his message that motivated Leone when he had Galena removed from the meeting.

According to his testimony, Galena spoke 14 or 15 times during the Hearing of the Public portions of previous Council meetings, sometimes critically of the Council's actions, without interruption from Leone or any other member of the Council. In

42

addition, the minutes of the March 20 Council meeting as well as the minutes of a January 2, 2007 meeting of the Council show that members of the public, during the Hearing of the Public portion of Council meetings, criticized the Council without any interruption from Leone or any of the other Council members. Specifically, several individuals asserted that the Council was breaking the law, as Galena did when he mentioned the Sunshine Act when he objected on March 20. Indeed, as we already have emphasized, one member of the public objected without any adverse repercussions to the Council's procedure of moving ordinances from the first reading to the second reading, the same issue that Galena sought to raise on March 20, 2007.

Despite a history of Galena and other members of the public speaking out and criticizing the Council, there is no evidence that Leone or any other Council member attempted to silence members of the public who were critical of the Council. Although Leone chastised certain individuals at the March 20 meeting for what he considered their baseless accusations of unlawful activity on the part of the Council, he did not rule them out of order, prevent them from speaking, or have them ejected from the meeting. In fact, as we discussed above, the other members of the public who spoke at the Hearing of the Public portion of the March 20 meeting criticized the Council more harshly than Galena and addressed the same subject that Galena sought to address in his subsequent objection without being removed or having their speech suppressed.[23] Further, as the

---

[23] Indeed, it is questionable whether Galena's objection to the procedure being followed may be characterized as a criticism of Leone or the Council. Certainly courts do not regard objections

43

District Court noted, there was no evidence that Leone discriminated among members of the public in terms of how he enforced the Administrative Code.

Ultimately, Galena's arguments, rather than showing that Leone was biased against him or his viewpoint, starkly demonstrate that the only difference between Galena and the other members of the public who spoke out on March 20 was the timing of their comments. Leone's reactions to Galena's comments during the Hearing of the Public portions of past Council meetings certainly can lead to the reasonable inference that, at least on some occasions, Leone disagreed with Galena's viewpoints. However, Leone ruled Galena out of order and had him ejected from the meetings only when Galena spoke at a time other than the Hearing of the Public portion of a Council meeting. On the 14 or 15 other occasions when Galena voiced his opinion, Leone, while sometimes disagreeing, did not prevent Galena from delivering his message. Likewise, Leone's comments to the members of the public in response to their comments show that while he disagreed with their viewpoints, he did not attempt to silence their speech during the time set aside for public comments.[24]

---

to their rulings as criticisms of them personally.

[24] The only Council minutes in the record other than those of the March 20 meeting, those from the January 2, 2007 meeting, show Leone making comments similar to those he made on March 20 expressing disappointment with the tenor of public comments. Apparently this back and forth is a regular scenario

To the extent that this case involves restrictions predicated on the timing of comments, the issue in this case is remarkably similar to the issue that the Court of Appeals for the Ninth Circuit considered in Kindt v. Santa Monica Rent Control Bd., 67 F.3d 266 (9th Cir. 1995). The plaintiff in Kindt, Albert Kindt, was a frequent participant in meetings of the Santa Monica Rent Control Board. Id. at 267. At one time Board regulations provided that members of the public who wished to address the Board fill out slips of paper, or "chits," corresponding to the agenda item they sought to address. Id. But because the public comments had become disruptive, the Board switched to a system in which it allowed public comments only during the last item of the agenda, Item 13. Id. at 268. Kindt, however, continued to speak and loudly disrupt Board meetings during portions of the meeting no longer open to public comments and, on several occasions, the Board removed him for disrupting the meeting. Id. at 268-69. Kindt filed a civil rights action alleging that the Board conspired to violate his First Amendment right to free speech by ejecting him from public Board meetings and by discriminating between speakers who supported their views and speakers who opposed them. The District Court granted the Board summary judgment and, following Kindt's appeal, the Court of Appeals affirmed.

Inasmuch as Kindt involves legal principles with respect to the timing of comments similar to those implicated here,

at Council meetings: certain members of the public express disappointment with the Council and Leone expresses his disagreement with their comments.

45

though Kindt's conduct was more egregious than Galena's, we will quote the Court of Appeal's reasoning at length:

> [Kindt] argues that because Item 13 matters occur at the end of the meeting, he is 'deprived of speech' because he has a smaller audience by the time he is allowed to speak and because he is not allowed more than three minutes to respond to longer presentations by speakers who addressed the Board under Item 4. Those facts do not establish that Kindt's First Amendment rights were violated. The Board regulations restricting public commentary to three minutes per item at the end of each meeting are the kind of reasonable time, place, and manner restrictions that preserve a board's legitimate interest in conducting efficient, orderly meetings. . . . No invidious regulation of Kindt's speech was implicated and content was not a factor -- e.g., the fact that the Board's views on the Cambodian regime might or might not be different from Kindt's was not the point at all. Whether he wanted to speak in favor of those views or

46

against them, his chit had to be heard under Item 13, which was the time set aside for public comment on all but such special matters as public hearings (Item 7). In other words, if the type of tangential resolution in issue here was meant to be covered by Rule 1024, the vice is not that the Board failed to hear public comment during the part of the agenda given over to 'announcements, commendations, award of service pins, introduction of special guests,' Item 4, or the 'salute to the flag,' Item 1. The vice is that the Board passed resolutions before it heard from the general public. That is not a violation of the First Amendment.

Again, Kindt was not kept from speaking because of the content of his speech, but because he submitted chits for items that were not held open for public commentary until Item 13 on the agenda. When the Board heard comments during Item 13, Kindt was never denied an opportunity to speak about any subject he wished. In fact, several times he addressed

47

personally derogatory remarks to individual Board members and was not silenced. Nor was he silenced before his time expired. In general, when Kindt was actually ejected from the Board meetings he was disrupting the proceedings by yelling and trying to speak when it was not time for an Item 13 matter. The only exception was when the ejection did not come until sometime after he and his cohort had disrupted a meeting, and the Board had taken a break to let things settle down. It appears that as soon as the Board returned, Kindt's cohort was seen to make an obscene gesture toward a Board member, which threatened to start the disruption all over again. Those were permissible removals within the Board's regulation 1017 governing rules of decorum at Board meetings.

Id. at 271 -272 (citations omitted) (first two emphases added and

48

last emphasis in original).[25]

It is significant that the minutes of the meeting of January 2, 2007, when Galena spoke during the nonpublic comment period, show that Leone merely called him out of order. So far as minutes in the record reveal, no member of the public other than Galena ever spoke out of the order for public comments set forth in the Administrative Code.[26] But on the occasion of which we are aware when that happened, Leone was consistent in his application of the Code's temporal restriction on public comments. The only reasonable inference from this evidence is that Leone prevented Galena from making comments regardless of their content at a time that the Code's time, place, and manner provisions restricted public comments. This case simply does not involve suppression of speech based on the speaker's viewpoints or identity and we will not repackage it so that it becomes such a case.

The video and the sheriff's report shows that Leone was upset and Galena was calm during the confrontation but nothing more. Of course, we realize that in his brief Galena recites that

---

[25] Though we reiterate that Galena's conduct surely was more benign than Kindt's, that difference does not make the principles of law that Kindt set forth with respect to a member of the public speaking at a time not designated for that purpose any less applicable here.

[26] We, of course, recognize that it is entirely possible that at meetings for which we do not have the minutes members of the public spoke out of order.

the audio and video recordings of the March 20 meeting show that, as Galena "was escorted out," Leone asked if "[a]nyone else want[s] to go?" Appellant's br. at 21. But that comment, though certainly impolitic, only shows Leone's intent to prevent other members of the public from interrupting the Council meeting in a similar manner at a time not provided for public comments. Without supporting evidence, and there is none here, the drawing of an inference that Leone harbored an animus toward Galena because of his identity or the drawing of an inference that the content of Galena's speech motivated Leone to have him removed from the meeting "is not a reasonable inference from the evidence but instead is a leap of faith." Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 95 (3d Cir. 2000).[27]

---

[27] We note that Judge Sloviter, in her dissent, compares the facts of this case to the facts in Monteiro. We do not discuss that case at length as the circumstances in that case were so different than the facts here and the jury's finding of the defendant's unconstitutional motive was unquestionably supported by a legally sufficient evidentiary basis. Monteiro involved a dispute between two council members over the City of Elizabeth's annual budget. 436 F.3d at 400-01. The president of the council, Perkins-Auguste, ejected Monteiro, another member of the council, from a council meeting after Monteiro interrupted Perkins-Auguste to defend himself from an ad hominem attack Perkins-Auguste made on him. Id. at 405. We found that "[w]hile Monteiro was arguably disrupting the proceedings by interrupting her, he was also defending himself from a personal attack. It was Perkins-Auguste who changed the tone of the

50

Galena further argues that the state lawfully could impose a restriction based on the content of his speech only if the speech would cause public unrest. See Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 896 (1949) ("[F]reedom of speech, though not absolute, . . . is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."). Galena reasons that inasmuch as his comments did not create public unrest, Leone must have suppressed his speech based on its content. The District Court thought that this line of reasoning was flawed logically inasmuch as it begs the question of whether, in giving effect to an otherwise legitimate time, place, and manner regulation, Leone acted with the subjective intent of suppressing speech.

Clearly, the Court reached the correct conclusion with respect to the Terminiello issue. To start with, as we have

meeting from a debate about the merits of the budget to a quasi-prosecutorial forum. . . ." Id. Thus, the circumstances of that case, which involved a debate between two council members, were different from the circumstances here, where a member of the public interrupted a council meeting at a time that was not set aside for public comments. Further, unlike in Monteiro, where the jury plausibly could infer that Perkins-Auguste had an unconstitutional reason for removing Monteiro predicated on their confrontation over the budget, as we have explained there is no basis to infer that Leone had an unconstitutional motive in removing Galena as he did not know the content of Galena's objection when he ruled him out of order.

emphasized, the restriction on speech was based on its timing, not its content. Furthermore, the enforcement, no matter how justified, of any restriction on speech, necessarily suppresses speech at the time it is enforced. Thus, if a member of the public at the Hearing of the Public portion of a Council meeting wanted to discuss his child's birthday party, the proposed speech, though not presenting a danger to anyone, would be so far removed from the business of the meeting, or the Council's or County's business in general, that the chairperson could suppress the speech without raising First Amendment issues. See Eichenlaub, 385 F.3d at 281.

Finally, Galena's contention that he was not creating a disturbance, at least as that term is ordinarily understood, by objecting to the Council's procedures, even if factually accurate, does not change our result. If even only one member of the public objects during a time when public comments are not allowed the Council's procedure in conducting business is affected even if the member of the public interrupts the meeting in a conversational, nonthreatening tone of voice. The interruption of the order of business is itself the disturbance.[28]

---

[28] Thus, this case is distinguishable from Norse v. City of Santa Cruz, 629 F.3d 966 (9th Cir. 2010) (en banc), where a governmental entity removed a member of the public from a public meeting for disagreeing without disrupting the meeting. In Norse, the Santa Cruz City Council ejected a member of the public from a Council meeting after he gave the Council a silent Nazi salute. Id. at 970. The Court rejected the City's argument that the City could remove those members of the public who made silent, non-disruptive gestures because members of the

See e.g., Kindt, 67 F.3d at 271 (upholding the ejection of a spectator from a public meeting because he was "disrupting the proceedings by yelling and trying to speak when it was not time for" public comments).

It is, of course, appropriate for us to consider how exempting all members of the public, and not just Galena, from the protocol confining comments to the Public Hearing portion of meetings would affect the functioning of the County Council. See Heffron, 452 U.S. at 654, 101 S.Ct. at 2567 (holding that state supreme court erred by failing to consider how granting all groups, and not just plaintiffs, an exemption from the government regulation would affect the State's interest of maintaining order at the state fair). Joseph Giles, a Council member, testified that "for the sake of the common good and for the sake of the order of the business of the meeting," the Council must remove persons who do not go through the normal process to address the Council. App. at 62-63. Regardless of how the Pennsylvania General Assembly supplemented free

public forfeited all First Amendment rights once the public comment period ended. Id. at 976; Id. at 979 (Kozinski, C.J., concurring) ("Even in a limited public forum like a city council meeting, the First Amendment tightly constrains the government's power; speakers may be removed only if they are actually disruptive."). But Norse, unlike this case, did not involve a situation in which the speaker injected himself into a public meeting at a time not provided for public participation by attempting to speak. In Norse the City removed the member of the public for giving the salute, not for giving it at the wrong time.

53

speech rights when it enacted the Sunshine Act, the First Amendment simply does not require that all members of the public be permitted to voice objections to the Council's procedures any time they desire to do so.

We also point out that the District Court, without objection from Galena, presented the case to the jury under instructions that made the question of whether Galena was creating a disturbance on March 20, 2007, irrelevant to the issues on this appeal. The Court told the jury to answer the question of whether Leone had Galena removed from the meeting with the intention of imposing reasonable restrictions on the time, place and manner of his speech so as to preserve the order and decorum of the meeting or whether Leone had him ejected based on Galena's message or identity. This instruction did not inject a disturbance issue into the jury's consideration. Accordingly, this case is simply not a case in which the Court was dealing with a content-based restriction, the validity of which would depend on whether the speech, unless suppressed, might create a disturbance or cause unrest.

Clearly, the evidence required that the jury conclude that Leone was enforcing time, place and manner restrictions. Inasmuch as the restriction was reasonable and the evidence required a finding that Leone had the intent to enforce it without regard for whether Galena was creating a disturbance, the Court correctly granted Leone judgment as a matter of law as the propriety of the enforcement of the restrictions did not depend on whether Galena was creating a disturbance. Indeed, Galena does not even contend in his brief that he objected when the Court did not charge the jury that should determine whether

54

Galena had been creating a disturbance. Thus, we are not concerned with an issue similar to the issue the Supreme Court faced in Terminiello.

## V. CONCLUSION

In sum, an analysis of all of the evidence in the record with regard to the March 20 confrontation demonstrates that Leone was enforcing a reasonable time, place, and manner restriction on Galena's speech designed to ensure that the Council functioned for its intended purpose: i.e., being the legislative body of Erie County. Like the District Court, we cannot find evidence in the record to support a reasonable inference that Leone ejected Galena from the March 20 Council meeting because of animus toward him or his message nor can we find evidence that Galena did not have an adequate alternative opportunity to state his objections to the Council's procedures. Therefore, the Court properly vacated the jury verdict and granted Leone's motion for judgment as a matter of law. Accordingly, we will affirm the District Court's orders of March 5, 2010, vacating the jury verdict, granting judgment as a matter of law in favor of Leone, and denying Galena's motions for attorney's fees and costs.

*Daniel T. Galena v. Fiore Leone*, No. 10-1914

SLOVITER, *Circuit Judge*, dissenting.

My colleagues have presented a learned exegesis on First Amendment law which, if raised in a pretrial context, may well carry the day. I differ because they fail (in my opinion) to give sufficient weight to yet another constitutional imperative – that grounded in the Seventh Amendment which requires judges to give higher weight to a jury's interpretation to the facts than to their own predilections.

In this case, they affirm the District Court's bold step overturning the jury's verdict for allegedly insufficient evidence. I respectfully dissent. Drawing all reasonable inferences in favor of the nonmoving party, as is required, I believe the evidence was sufficient to support the jury's conclusion that Fiore Leone, the chairman of the Erie County Council, was motivated more by the content of Daniel Galena's speech and/or his identity than by a desire to enforce a reasonable regulation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000).

Although Galena may have been speaking out of turn when he objected to the March 20, 2007 proceedings as violating the Pennsylvania Sunshine Act, it is undisputed that Leone's reaction was extremely angry, indeed disproportionately so. Meanwhile, Galena remained calm throughout. Even the police officer who escorted Galena from the meeting testified that Leone was "pretty animated . . . pounding the gavel," while Galena was "pretty calm throughout the whole ordeal." App. at 56. Another councilmember described the exchange as "boisterous," but said that Galena was not insulting, threatening, insolent, slanderous, or obscene. Finally, Galena testified that Leone responded in a "loud, angry tone." App. at 38. Although a jury would not be required to credit Galena's testimony, it certainly was entitled to. Even if the jury chose to ignore Galena's testimony, the other testimony was consistent that Leone reacted in a loud, angry manner to Galena's untimely objection. The videotape of the exchange, which was played for the jury, supports that testimony. Leone's

disproportionate reaction gives rise to an inference that it was precipitated by something other than Galena's miscue.

This conclusion is supported by our precedent. In *Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006), we held that the District Court properly denied judgment as a matter of law when the defendant presiding officer removed another councilperson from a meeting. In that case, as here, the plaintiff councilperson was interrupting the presiding officer and there was a valid time, place, and manner speech restriction in effect. *Id.* at 403-05. Notwithstanding, because the presiding officer responded in an emotionally charged, angry way and with personal attacks against the other councilperson, we held that a reasonable jury could find that the officer was motivated by the plaintiff's speech or identity, not by a desire to enforce the otherwise valid regulation. *Id.* at 405. We also held that "[t]he speed with which [the presiding officer] determined to eject [the plaintiff] from the meeting . . . could be viewed by a reasonable jury as evidence" that the officer was motivated by content and personal animosity, rather than a desire to maintain decorum. *Id.*

Though the evidence of the presiding officer's ill-motive was perhaps stronger in *Monteiro* than it is here, *Monteiro* reinforces that the jury was entitled to infer from Leone's anger and the speed with which he silenced Galena that he was impermissibly motivated. Despite the factual similarity between *Monteiro* and this case, the majority does not persuasively distinguish its outcome.

So swift was Leone's retribution that Galena was hardly able to articulate the substance of his objection. The majority characterizes Leone's immediate sanction as evidence that the content of the speech did not motivate Leone. While that is one way to view the evidence, that is certainly not the only way. The jury could have reasonably inferred, as we held in *Monteiro*, that Leone acted swiftly because he knew, even if not the specific terms, at least the general tenor of Galena's objection and attempted to preemptively silence him. Such an inference is reasonable

2

given that Galena had been a frequent commentator at meetings, often raising arguments that Leone himself characterized as being criticisms of the council. *See* App. at 75 (Leone testified that Galena had previously criticized him for acting "illegal[ly], as far as some of the issues were concerned, [Galena] said that a few times when he addressed Council."). Even were such an inference not reasonable, the First Amendment protects restrictions based on the speaker's identity; without question Leone knew that Galena was the speaker.

Other evidence also supports the jury's verdict. For example, as outlined by the majority, after the public hearing portion of the March 20 meeting had concluded, Leone ominously warned three of the citizens who had spoken to be careful when they accused the council of breaking the law and commented "[i]t seems like no matter what, some people cannot be pleased." App. at 144-45. Leone then warned people to "be careful, because, if necessary, Council will take the matter to court." App. at 145. This warning appears to be content based—Leone was tired of being accused by constituents of breaking the law and threatened to take them to court if they continued to do so. It is hardly a comment one would expect from a neutral presider.

The jury could have reasonably concluded that when Leone silenced Galena, Leone was grouping him with the other constituents whom he had first threatened. The jury could have viewed Leone's conduct as motivated by his anticipation that Galena's speech would be critical of him. As noted, Leone testified that in the past Galena had accused him of acting illegally, the same type of accusation that prompted Leone to issue his warning on March 20, 2007. Indeed, on March 20 Galena was again accusing Leone of acting *ultra vires*, in contravention of the Pennsylvania Sunshine Law (an objection which, according to the transcript, Galena was barely able to utter before he was ejected). *See* App. at 148. Additional evidence indicating that Leone was grouping Galena with the other constituents is the fact that as Galena was being escorted out of the room, Leone shouted, asking "Anyone else want to go?" *See*

3

*Galena v. Leone*, 711 F. Supp. 2d 440, 447 (W.D. Pa. 2010). The majority opinion does not discuss this fact.

The fact that Leone threatened Galena with "harassment" charges as he ejected Galena, ostensibly because Galena accused the council of acting illegally, further supports the jury's conclusion that Leone was motivated by the content of Galena's speech. At trial, Leone attempted to explain this threat away, testifying that he more or less meant "disorderly conduct." App. at 110. But the jury was not required to credit that explanation. As the factfinder charged with making credibility determinations, it appears they did not. The Supreme Court has instructed that we are not to second guess such credibility determinations. *Reeves*, 530 U.S. at 150.

On that same note, the majority appears to credit Leone's testimony that he was merely enforcing a provision of the Erie Administrative Code, which he understood to allow public participation only during the public hearing portion of the meeting. However, as outlined above, there are numerous facts—Leone's anger, swift response, and content-based threats—from which a jury could have rejected Leone's testimony and concluded that procedural stewardship was not his motive.

Finally, the majority emphasizes that Galena had spoken at meetings many times in the past, and Leone had, for the most part, allowed him and other persistent objectors to speak. Viewed in this light, this historical relationship is helpful for Leone. But the history reveals another side. Namely, Leone had a track record of reacting negatively towards Galena: scowling, grimacing, and laughing at Galena's comments. Notwithstanding Leone's failure to have silenced Galena in the past, the jury could have inferred from Leone's past behavior that he had a growing disdain for Galena and his comments. The jury could have concluded that the disdain reached a boiling point at the March 20, 2007 meeting and that Leone silenced Galena because of the content of his speech and/or his identity.

4

In sum, the jury was entitled to conclude that Leone was motivated impermissibly by Galena's speech content and/or his identity. We should be hesitant to override the jury's judgment with our own. I would affirm the jury verdict.